UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-07475-MWF (RAO)          **Date:  August 5, 2022**

Title:     GCP Applied Technologies Inc. v. AVM Industries, Inc.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                     Court Reporter:
Rita Sanchez                      Not Reported

Attorneys Present for Plaintiff:   Attorneys Present for Defendants:
None Present                      None Present

**Proceedings (In Chambers):**          ORDER RE: MOTIONS FOR SUMMARY
                                        JUDGMENT

There are 11 motions before the Court.

Plaintiff GCP Applied Technologies Inc. filed three motions:

1. Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims (Docket No. 134).

2. Motion for Summary Judgment as to Infringement of Certain Accused Products (Docket No. 135).

3. Motion for Summary Judgment as to No Inequitable Conduct (Docket No. 136).

Defendant AVM Industries, Inc. filed eight motions:

1. Motion for Summary Judgment as to Invalidity for Indefiniteness (Docket No. 116).

2. Motion for Summary Judgment as to Noninfringement (Docket No. 119).

3. Motion for Summary Judgment as to Invalidity Under 35 U.S.C. §§ 102, 103 (Docket No. 122).

4. Motion for Summary Judgment as to Unenforceability (Docket No. 125).

5. Motion for Partial Summary Judgment as to Non-Entitlement to Lost Profits (Docket No. 128).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-07475-MWF (RAO)**                **Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

6.  Motion for Partial Summary Judgment as to Finding No Infringement in Relation to International Shipments (Docket No. 129).

7.  Motion for Partial Summary Judgment as to Finding No Basis for Enhanced Damages Nor Attorney Fees (Docket No. 130).

8.  Motion for Leave to File Evidence Inadvertently Not Timely Filed (Docket No. 139).

The Court has read and considered the papers filed in connection with the motions and held a video teleconference hearing on **February 16, 2022**, pursuant to General Order 21-08 and Order of the Chief Judge 21-124 arising from the COVID-19 pandemic.

The Court rules as follows:

•  AVM's Motion for Summary Judgment as to Invalidity for Indefiniteness is **DENIED** because AVM fails to demonstrate that the claim terms are indefinite by clear and convincing evidence.

•  GCP's Motion for Summary Judgment as to Infringement of Certain Accused Products is **GRANTED** because under the correct claim interpretation, AVM's accused products directly infringe the `879 Patent.

•  AVM's Motion for Summary Judgment as to Noninfringement is **GRANTED *in part*** and **DENIED *in part***.  Specifically, the Motion is **GRANTED** as to an infringement theory against any product with a whiteness value less than or equal to 55%.  But the Motion is **DENIED** as to the White Products and the G-series products for the reasons stated.

•  GCP's Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims is **GRANTED *in part*** and **DENIED *in part***. Specifically, the motion is **GRANTED** as to anticipation but **DENIED** as to obviousness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

- AVM's Motion for Summary Judgment as to Invalidity Under 35 U.S.C. §§ 102, 103 is **DENIED** because AVM's expert fails to apply the Court's construction of certain claim terms and fails to opine on his motivation to combine specific prior art references.

- GCP's Motion for Summary Judgment as to No Inequitable Conduct is **GRANTED** because AVM fails to present evidence that a specific individual had both the knowledge and the intent required to deceive the PTO.

- AVM's Motion for Summary Judgment as to Unenforceability is **DENIED** because the record is insufficient to show evidence of intent by a specific individual.

- AVM's Motion for Partial Summary Judgment as to Non-Entitlement to Lost Profits is **GRANTED** because GCP has failed to introduce sufficient evidence to reconstruct the marketplace under a job-by-job analysis.

- AVM's Motion for Partial Summary Judgment as to Finding No Infringement in Relation to International Shipments is **GRANTED** because AVM's international sales took place abroad.

- AVM's Motion for Partial Summary Judgment as to Finding No Basis for Enhanced Damages Nor Attorney Fees is **DENIED** because factual disputes remain and the motion is premature.

- Motion for Leave to File Evidence Inadvertently Not Timely Filed is **DENIED _as moot_**.

In light of these rulings, the remaining triable issues are:  (1) infringement as to AVM's G-series products; (2) invalidity for obviousness; and (3) damages.  GCP, however, is precluded from pursuing both a job-by-job damages theory and damages for AVM's Canadian sales.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-07475-MWF (RAO)                **Date:  August 5, 2022**
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

## I.    BACKGROUND

This is an action for patent infringement.

Plaintiff GCP asserts infringement of certain claims of U.S. Patent 8,713,879 (the "`879 Patent" or the "Patent") by Defendant AVM.  (Second Amended Complaint ("SAC") (Docket No. 40)).  AVM filed its answer and asserted a counterclaim for invalidity of the `879 Patent.  (Amended Answer and Counterclaim (Docket No. 100)).

The `879 Patent is directed to waterproofing membranes for concrete structures. (SAC ¶ 3).  The membranes are constructed of a flexible carrier sheet, a layer of waterproofing pressure-sensitive adhesive on one surface of the carrier, and inorganic particles adhered to the layer of adhesive.  (*Id*.).  The particles protrude above and protect the adhesive layer.  (*Id*.).  As generally used, the membranes are disposed over a substrate such that the surface with the layer of adhesive and particles remains exposed, so that concrete can be post-cast against this outer exposed working surface of adhesive layer and inorganic particles.  (*Id*.).  The particles provide a substantially reflective surface and, due to their physical properties, facilitate bonding of the post-cast concrete to this outer exposed surface of the membrane.  (*Id*.).

Independent claim 1 of the `879 Patent states:

1. A waterproofing membrane comprising:

a flexible carrier sheet with two opposed surfaces,

an approximately uniform layer of a waterproofing pressure sensitive adhesive on one surface of the carrier sheet such that the pressure sensitive adhesive has an average thickness in the range of 75 μm to 500 μm and has an outer exposed surface, and

substantially reflective inorganic particles adhered directly to the outer exposed surface of the pressure sensitive adhesive,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

wherein the substantially reflective inorganic particles have an average
diameter of about 100 μm to 600 μm that is approximately equal to or
greater than the average thickness of the pressure sensitive adhesive layer,

wherein the substantially reflective particles cover approximately 70% to
100% of the outer exposed surface of the pressure sensitive adhesive so as
to provide the membrane with a substantially reflective surface,

wherein the waterproofing membrane does not include a
removeable release sheet.

(SAC at Ex. A (the "`879 Patent").

Following a *Markman* hearing, the Court construed seven disputed claim terms:

- "Membrane" means "a thin pliable sheet of material forming a barrier or
  lining."
- "Flexible carrier sheet" means "a thin film, extrusion coating, or fabric that is
  the mechanical backbone of the membrane."
- "Waterproofing pressure sensitive adhesive" retains its plain and ordinary
  meaning.
- "Outer exposed surface" means "the surface of the layer of the adhesive
  opposite the surface that is bonded to the carrier sheet and is accessible to
  have concrete cast directly against it."
- "Substantially reflective inorganic particles" means "inorganic particles that,
  when covering 70-100% of the surface of a layer of pressure sensitive
  adhesive, impart a minimum whiteness value to the surface as measured by
  reflectometry" (the parties' stipulated construction).
- "Substantially reflective surface" means "the outer exposed layer of the
  pressure sensitive adhesive, 70-100% covered by substantially reflective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-07475-MWF (RAO)                **Date:** August 5, 2022
**Title:**      GCP Applied Technologies Inc. v. AVM Industries, Inc.

inorganic particles, so as to exhibit a whiteness value of greater than 55% as measured by reflectometry."

-   "Substantially reflective particles cover approximately 70% to 100% of the outer exposed surface of the pressure sensitive adhesive" means "70-100% of the surface area of the outer exposed surface of the pressure sensitive adhesive is coated with the particles, as measured by electron microscopy."

-   "Removable release sheet" means "a film or paper that covers the outer exposed adhesive layer in whole or in large part to prevent that layer from adhering to the carrier sheet of the membrane when the membrane is rolled up."

(Order Re: Claim Construction (Docket No. 101)).

## II.  **DISCUSSION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and citations omitted).

There are ten motions for summary judgment before the Court – many with redundant or overlapping arguments.  To simplify the intersecting issues, the Court's analysis groups the motions thematically.  First, all motions related to indefiniteness and infringement.  Second, all motions related to invalidity under 35 U.S.C §§ 102 and 103.  Third, all motions related to inequitable conduct.  And finally, AVM's three motions for partial summary judgment.  In the final grouping, the Court will also consider AVM's Motion for Leave to File Evidence Inadvertently Not Filed.

### A.    **Indefiniteness and Infringement**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-07475-MWF (RAO)                **Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

In this section, the Court discusses the following motions: (1) AVM's Motion for Summary Judgment re Invalidity for Indefiniteness; (2) GCP's Motion for Summary Judgment re Infringement of Accused Products; and (3) AVM's Motion for Summary Judgement re Non-Infringement.

Before diving into the merits, the Court must resolve a claim construction issue that is threaded into each motion.  That is, whether the `879 Patent's claim limitations should be applied to the completed membrane product, or whether the claim limitations should be applied to the membrane at an intermediate point during the manufacturing process.  The Court's ruling on the issue affects the outcome of the motions in this section, so the Court addresses it first.

## 1.  Threshold issue: a product-by-process approach

GCP insists that the Patent's claim terms should be construed and applied at an intermediate point of membrane manufacture – more specifically, that the claim terms should be construed at a point after the adhesive is spread on the carrier sheet but before the inorganic particles are applied.  Conversely, AVM insists that the claim limitations must be construed and applied in view of the completed membrane product.

AVM's argument is straightforward:  Claim 1 of the `879 Patent is directed to a "waterproofing membrane"; therefore, the Patent's limitations should be applied to the membrane as a finished product.  According to AVM, if the inventor wished to direct the Patent's claims toward a method of manufacture, he could have used product-by-process limitations.  *See* MPEP 2173.05(p).  These types of limitations define the claimed product in terms of the process by which it is made.  For example, a proper product-by-process claim preamble in our situation would read "a waterproofing membrane obtained by the process of . . ." or some similar variation.

In response, GCP argues that the plain and ordinary meaning of the Patent's specification directs the claims toward an intermediate point of manufacture, *e.g.*, before the inorganic particles are applied to the layer of pressure sensitive adhesive.  According to GCP, this is the plain and ordinary meaning because the Patent describes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

the limitations of each material separately rather than describing the material in the context of the completed membrane product.

The Court ordered both parties to file supplemental briefing that addresses this threshold issue.  GCP provided the Court with two relevant cases:  *Indivior, Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325 (Fed. Cir. 2019) and *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371 (Fed. Cir. 2009).  In *Indivior*, the panel affirmed the district court's conclusion that "a product claim may recite elements in the state in which they exist during manufacture, before the final product exists."  930 F.3d at 1342 (quotation omitted).  As *Indivior* explained:

> [T]he district court properly rejected [defendant's] position based on our precedent. For example, in *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1375–76 (Fed. Cir. 2009), the patentee claimed a refrigerator shelf "comprising" a lower wall having a certain resilience. Since the specification made clear that the resilience only referred to resilience during assembly, we held that the lower wall only required that property during assembly.

*Id*. at 1342–43.  In other words, a product claim – without product-by-process limitations – may recite elements in the state in which they exist during manufacture if the patent's specification indicates that it is doing so.

AVM seems to agree with this statement of the law, as it also cites to *Indivior* in its supplemental briefing.  But AVM asserts that *Indivior* and *Gemtron* are both distinguishable because, unlike the patents in those cases, the `879 Patent fails to make clear that the product claims are recited in a manufactured state.  This is because the specification does not explicitly refer to the elements as occurring during manufacture or assembly.  And since there is more than one sensible reading of the `879 Patent, *i.e.*, elements recited in a manufactured state and elements recited in the final product, AVM argues that this creates confusion as to when direct infringement occurs.

CIVIL MINUTES—GENERAL                                                8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-07475-MWF (RAO)**          **Date:  August 5, 2022**
Title:     GCP Applied Technologies Inc. v. AVM Industries, Inc.

While AVM's argument is clever, the Court is cognizant that claims should be construed to sustain their validity "where the construction is 'practicable' and does not conflict with the explicit language of the claim." *Rhine v. Casio, Inc*., 183 F.3d 1342, 1345 (Fed. Cir. 1999).  Here, the Court concludes that a person of ordinary skill would understand that the disputed claim language applies to an intermediate point of manufacture based on the intrinsic evidence apparent in the `879 Patent.  And this conclusion does not conflict with the explicit language of the claim terms because the Patent does not state otherwise.

More specifically, the Patent's intrinsic evidence informs a person of ordinary skill that the limitations of the pressure sensitive adhesive are measured at a point after the adhesive is spread on the carrier sheet but **before** the inorganic particles are applied.  This is so for two reasons:

*First*, the specification completely describes the uniformity and the thickness of the adhesive layer before and independently of the particles.  (`879 Patent at 3:49–64). The particle limitations are recited afterward and only said to be adhered to the outer exposed surface of the pressure sensitive adhesive.  A natural reading, therefore, provides the limitations of the adhesive layer and the particles independently of one another, and at an intermediate stage before the two components are adhered together.

*Second*, "Example 1" of the Patent supports the same reading.  Example 1 describes a test of the "effect of particle size," where four different particle sizes were evaluated on three different adhesive thicknesses.  (*Id*. at 7:50–8:25).  The particle sizes and the adhesive thicknesses are provided first, and then it states that the particles are coated onto the adhesive by applying an excessive amount by hand.  This order of events, and a lack of measurements taken after applying the particles, supports the Court's conclusion that thickness and uniformity of the adhesive layer are determined at an intermediate point of manufacture before the particles are applied.

**2.  AVM's Motion for Summary Judgment re Invalidity for Indefiniteness**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-07475-MWF (RAO)**                    **Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

AVM filed a Motion for Summary Judgment re Invalidity for Indefiniteness (Docket No. 116), GCP filed an Opposition (Docket No. 157), and AVM filed a Reply (Docket No. 165).

"A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 898–99 (2014).

AVM argues that two independent claim terms of the `879 Patent should be invalidated as indefinite:  (1) "outer exposed surface" of the "pressure sensitive adhesive"; and (2) "pressure sensitive adhesive has an average thickness."  To prevail, AVM must prove indefiniteness by clear and convincing evidence.  *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011) (holding that an invalidity defense must be proved by clear and convincing evidence).

### a.  "outer exposed surface" of the "pressure sensitive adhesive"

Following the *Markman* hearing, the Court construed "outer exposed surface" of the "pressure sensitive adhesive" to mean, "***the surface of the layer of the adhesive opposite the surface that is bonded to the carrier sheet and is accessible to have concrete cast directly against it.***"  (Order Re: Claim Construction at 9).  AVM argues that "outer exposed surface" is indefinite because the claim further recites that the "substantially reflective particles cover approximately 70% to 100% of the outer exposed surface of the pressure sensitive adhesive."  According to AVM, this creates a logical inconsistency because the pressure sensitive adhesive cannot be 100% covered by substantially reflective particles and still be "accessible to have concrete cast directly against it."

The Court, however, does not see it this way.  "Claim interpretations that do not read on the preferred embodiment are 'rarely, if ever, correct and would require highly persuasive evidentiary support.'"  *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry*., Ltd., 357 F.3d 1319, 1336 n.19 (Fed. Cir. 2004) (quoting *Vitronics Corp. v. Conceptronic, Inc*.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

90 F.3d 1576, 1583 (Fed. Cir. 1996)).  Here, the invention is "a waterproofing membrane that bonds to concrete cast against it." (`879 Patent at 3:40–41).  Critically, the concrete must **bond** to the membrane, and it does this by coming into contact with the adhesive layer.  In other words, the concrete must permeate through the particle layer to make contact with the pressure sensitive adhesive.

When it comes to the particle layer, a person of ordinary skill would understand that the Patent specification describes a **range** of particle coverage – not absolute coverage – because to achieve the preferred embodiment, the concreate must permeate through the particle layer to reach the pressure sensitive adhesive.  As the specification makes clear, the concrete does not bond to the membrane by contacting the particle layer; rather, the bond is created when the concrete contacts the pressure sensitive adhesive.  The particle layer simply protects the adhesive from sunlight exposure. (*Id*. at 6:19–27).  The specification explains that membranes without the particle layer "will suffer degradation of the pressure sensitive adhesive by heat and UV radiation and will not bond well to concrete after such exposure."  (*Id*.).

The Court's construction is also supported by the plain language of the claim.  It teaches that "substantially reflective particles cover **approximately** 70% to 100% of the outer exposed surface of the pressure sensitive adhesive so as to provide the membrane with a substantially reflective surface."  (*Id*. at 9:57–59).  This **approximate** range of coverage creates a particle layer that is substantially reflective – not a particle layer that frustrates the Patent's preferred embodiment.

### b.  "pressure sensitive adhesive has an average thickness."

AVM also argues that the "average thickness" of the pressure sensitive adhesive is an indefinite claim limitation because the `879 Patent does not define a method to measure the "average."  AVM argues that there are three possible methods of measuring the average thickness.  For simplicity, the Court labels and defines the methods as follows:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

Method 1:  using a "solvent method" to measure the thickness at an intermediate point of manufacture.

Method 2:  measuring the completed waterproofing membrane between the carrier sheet and the adhesive's outer exposed surface between the inorganic particles.

Method 3: measuring the completed waterproofing membrane between the carrier sheet and the adhesive's outer exposed surface between the inorganic particles; measuring the thickness of the adhesive layer between the carrier sheet and below the lower ends of the embedded inorganic particles; and taking the average of the two measurements.

As the Court previously explained, a person of ordinary skill would construe the limitations of the pressure sensitive adhesive as occurring at an intermediate point of manufacture – *i.e.*, after the adhesive is spread on the carrier sheet but before the inorganic particles are applied.  (*See supra*, Part II.A.1.).  Therefore, both Method 2 and Method 3 are improper methods of measuring the "average thickness" because both methods construe the adhesive limitations against the completed membrane product.  Because AVM only offers one possible method of measurement to determine adhesive thickness at an intermediate point of manufacture, the claim limitation is not indefinite.

Accordingly, AVM's Motion for Summary Judgment re Invalidity for Indefiniteness is **DENIED**.

### 3.  GCP's Motion for Summary Judgment re Infringement of Accused Products.

GCP filed a Motion for Summary Judgment re Infringement of Accused Products (Docket No. 135), AVM filed an Opposition (Docket No. 142), and GCP filed a Reply (Docket No. 173).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

GCP moves for summary judgment on the basis that AVM's AUSSIE SKIN® 550 and 560 products (the "White Products") literally infringe claims 1, 2, 7, 11, 12, 13, 15, and 16 of the `879 Patent.

During the claim construction phase, AVM introduced a redesigned "G" or "gray" product (the "G-series" products).  The G-series products are designed to have a less reflective surface, in an attempt to avoid the "substantially reflective surface" claim limitation of the `879 Patent.  The Court previously construed "substantially reflective surface" to mean "the outer exposed layer of the pressure sensitive adhesive, 70-100% covered by substantially reflective inorganic particles, so as to exhibit a whiteness value of greater than **55%** as measured by reflectometry."  (Order Re: Claim Construction at 9) (emphasis added).  In other words, if a product has a whiteness value greater than 55%, it meets the "substantially reflective surface" claim limitation.  GCP clarifies that only the White Products are subject to its Motion for Summary Judgment re Infringement of Accused Products.

Determining patent infringement is a two-step process.  *Cybor Corp. v. FAS Techs., Inc*., 138 F.3d 1448, 1454 (Fed. Cir. 1998).  "First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device."  *Id.* (citations omitted).  Here, the Court has already determined the scope and meaning of the asserted patent claims, so a comparison to the accused product is all that remains.

"Whether an accused device or method infringes a claim [] is a question of fact."  *Schoell v. Regal Marine Indus., Inc*., 247 F.3d 1202, 1207 (Fed. Cir. 2001).  A patent claim is literally infringed only if each and every limitation set forth in a claim is found in the accused product.  *Franks Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004).

GCP, through its expert Mr. Stieve, argues that every limitation of claims 1, 2, 7, 11, 12, 13, 15, and 16 of the `879 patent are literally met by the White Products.

The White Products are allegedly waterproofing membranes with the following characteristics:

---

CIVIL MINUTES—GENERAL                                                                    13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                 Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

- a carrier sheet .05 mm to 2.0 mm thick, comprised of a polymer film, high density polyethylene resin, and ethylene-vinyl resin;

- with an approximately uniform layer of waterproofing pressure sensitive adhesive that is 381 μm to 394.4 μm thick for the AUSSIE SKIN® 550, or 307 μm thick for the AUSSIE SKIN® 560;

- onto which inorganic particles, comprised of white cement, are cast;

- with inorganic particle diameters of 460 μm for AUSSIE SKIN® 550, or 600 μm for AUSSIE SKIN® 560;

- those particles covering over 95% of the surface of the adhesive;

- creating a reflective surface with a whiteness value of around 63%; and

- creating a waterproofing membrane that does not need a release sheet when rolled.

(*See generally* Expert Report of Douglas R. Stieve (Docket No. 137-20)).

ACP does not dispute the accuracy of Mr. Stieve's measurements or observations related to the White Products.  Rather, ACP disputes literal infringement under its interpretation of two claim limitations: (1) "an approximately uniform layer of a waterproofing pressure sensitive adhesive on one surface of the carrier sheet"; and (2) "the pressure sensitive adhesive has an average thickness in the range of 75 μm to 500 μm and has an outer exposed surface."

> ### a.  "an approximately uniform layer of a waterproofing pressure sensitive adhesive on one surface of the carrier sheet"

Claim 1 requires the layer of pressure sensitive adhesive to be "approximately uniform."  AVM argues that its White Products fail to meet this limitation because they

---

**CIVIL MINUTES—GENERAL**                                              **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-07475-MWF (RAO)**                **Date:  August 5, 2022**
**Title:**       GCP Applied Technologies Inc. v. AVM Industries, Inc.

each contain a "selvedge edge," where the thickness of the adhesive materially differs from the portion of the membrane with the inorganic particles.



(Figure 1 – showing the selvedge edge under a removable strip).

The White Products each have a selvedge edge that is covered by a removable strip.  The selvedge edge is designed to facilitate the connection of adjacent membrane sheets.  For example, when the strip is removed, an adhesive layer is exposed, and an adjacent sheet is connected by overlapping the adjacent sheet onto the selvedge edge.  Critically, the selvedge edge does not have inorganic particles like the rest of the membrane.

To understand AVM's argument, one must understand the physical reaction of the adhesive layer when the inorganic particles are applied to it.  The particles do not sit atop the adhesive layer, they are embedded in it.  When this happens, the adhesive layer necessarily elevates around the edges of the particles, creating small peaks and troughs in the adhesive.  AVM argues that, when the adhesive layer with inorganic particles is compared to the adhesive on the selvedge edge, it cannot reasonably be considered "approximately uniform" because the adhesive on the selvedge edge is smooth and the adhesive with embedded particles is not.

GCP rebuts this argument in two ways.  First, under GCP's proposed interpretation, the claim limitations of the pressure sensitive adhesive should be construed at an intermediate point of manufacture after the adhesive layer is applied to the carrier sheet but **_before_** the inorganic particles are applied.  Second, the selvedge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

edge cannot avoid the White Products' alleged infringement because it is an additional and unnecessary component to the membrane.

The Court need not reach GCP's second argument, as it agrees with GCP's interpretation of the claim limitations.  (*See supra*, Part II.A.1.).  Under GCP's interpretation, the entire sheet would be "approximately uniform," even if the selvedge edge is considered, because the adhesive layer is evenly spread before the inorganic particles are applied.  AVM challenges GCP's overall interpretation, but AVM does not challenge this specific outcome if the Court were to accept GCP's interpretation, as it has done so here.

**b. "the pressure sensitive adhesive has an average thickness in the range of 75 μm to 500 μm and has an outer exposed surface"**

AVM alternatively argues that GCP has not met its burden showing direct infringement because GCP's measurement of the adhesive's "average thickness" is taken at an intermediate point of manufacture.  Again, AVM argues that the membrane should be measured as a completed product.  This argument fails too, because the Court agrees with GCP that the claim limitations of the adhesive layer are properly determined at an intermediate point of manufacture.  (*See supra*, Part II.A.1.).

GCP used the "solvent method" to measure the thickness of the White Products' adhesive layer before the inorganic particles were applied.  (*See supra* Part II.A.2.b. ("Method 1")).  While AVM suggests that its proposed measurement techniques against the completed product are superior, it does not materially dispute the accuracy of the solvent method or Mr. Stieve's physical application of the method.

Accordingly, GCP's Motion for Summary Judgment re Infringement of Accused Products is **GRANTED**.

**4.  AVM's Motion for Summary Judgement re Non-Infringement**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

AVM filed a Motion for Summary Judgment re Non-Infringement (Docket No. 119), GCP filed an Opposition (Docket No. 157), and AVM filed a Reply (Docket No. 166).

AVM makes the same arguments in this motion as it did in opposition to GCP's motion for infringement:  (1) that the White Products' adhesive layer is not "approximately uniform"; and (2) that GCP failed to show infringement under its improper measurement of "average thickness."  These arguments are rejected for the same reasons described above and AVM's motion is **DENIED** on these grounds.

But AVM also argues for summary judgment on the basis that its G-series products do not infringe the `879 Patent.  According to AVM, its G-series products all have a reflectivity of less than 55% (except for a single mismarked batch).  AVM also argues that GCP cannot pursue an infringement theory under the doctrine of equivalents because the `879 Patent disavows a whiteness value less than or equal to 55%.  In other words, GCP "cannot recapture under the doctrine of equivalents what the specification clearly gives up."  *Rembrandt Pat. Innovations, LLC v. Apple, Inc*., 716 F. App'x 965, 977 (Fed. Cir. 2017) (citing *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1335 (Fed. Cir. 2014)).

As explained in the Court's order denying GCP's Motion for Reconsideration, there is sufficient evidence that the Inventor unmistakably disavowed a whiteness value less than or equal to 55%.  (Docket No. 200).  Accordingly, AVM's motion is **GRANTED** as to GCP's infringement theory under the doctrine of equivalents for any product with a whiteness value less than or equal to 55%.

Nonetheless, the Motion is **DENIED** to the extent it seeks an order absolving AVM of infringement for the entire G-series product line.  A fact issue remains as to the whiteness value of AVM's G-series products because, as AVM admits, at least one batch with white cement was mismarked as a G-series product.  Because of this, the Court cannot determine, as a matter of law, that all products under the G-series labels do not infringe.

**B.    Invalidity Under 35 U.S.C §§ 102 and 103**

CIVIL MINUTES—GENERAL                                    17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)            Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

GCP and AVM filed overlapping motions concerning invalidity for anticipation and obviousness.  The Court considers each motion in turn.

### 1.  GCP's Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims

GCP filed a Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims (Docket No. 134), AVM filed an Opposition (Docket No. 148), and GCP filed a Reply (Docket No. 172).

GCP brings this motion on grounds that AVM is unable to maintain certain prior art invalidity defenses by clear and convincing evidence.  Specifically, GCP argues that AVM cannot maintain its positions that the `879 Patent claims 1–8 and 10–17 are invalid as anticipated, or that dependent claims 2–8, 10–14, and 16–17 are invalid as obvious.

### a.  Anticipation under 35 U.S.C. § 102

"Section 102 embodies the concept of novelty – if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention."  *Net MoneyIN, Inc. v. VeriSign, Inc*., 545 F.3d 1359, 1369 (Fed. Cir. 2008).  "To show that a patent claim is invalid as anticipated [under § 102], the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention."  *Silicon Graphics, Inc. v. ATI Tech., Inc*., 607 F.3d 784, 796 (Fed. Cir. 2010).  Moreover, "[b]ecause the hallmark of anticipation is prior invention, the prior art reference [] must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'"  *Net MoneyIN*, 545 F.3d at 1369 (quoting *Connell v. Sears, Roebuck & Co*., 722 F.2d 1542, 1548 (Fed. Cir. 1983)).

Express disclosure of all elements is not required, so long as the "missing characteristic is necessarily present, or inherent, in the single anticipating reference."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

*Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (citing
*Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed.Cir.1991)).  "In
general, a limitation or the entire invention is inherent and in the public domain if it is
the 'natural result flowing from' the explicit disclosure of the prior art."  *Id*. at 1379
(citation omitted).

AVM's expert, Phillip Dregger, opines that claims 1 and 15 of the `879 Patent
are invalid due to anticipation based on two prior art references:  U.S. Patent
No. 7,776,432 to Serwin ("Serwin" (Docket No. 137-14)) and U.S. Patent No.
6,933,007 to Fensel ("Fensel" (Docket No. 137-15)).  Because anticipation is only
found in a single prior art reference, the Court analyzes each individually.

### i.  *Serwin*

Serwin teaches a "[c]omposite sandwich construction" having dense and
compact configurations that "effectively hamper the ingression of water."  (Serwin at
1:4–6; 5:44–45).  The construction is "especially suitable as bridge decks, on oil
platforms, ship decks . . . and other tough and exposed applications."  (*Id*. at Abstract).

GCP argues that Mr. Dregger's anticipation conclusion is improper because he
fails to apply the Court's construction of "membrane" and "flexible carrier sheet."
*TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008) ("An
expert must '[compare] the construed claims to the prior art.'") (quoting *Helifix, Ltd. v.
Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000)).  In the Court's claim
construction order, the Court construed "membrane" to mean "a thin pliable sheet of
material forming a barrier or lining," and "flexible carrier sheet" to mean "a thin film,
extrusion coating, or fabric that is the mechanical backbone of the membrane."  (Order
re Claim Construction at 4–5).  The Court need only address GCP's argument related
to "flexible carrier sheet" to demonstrate that Serwin fails to disclose "each and every"
element of the `879 Patent.

To explain how Serwin discloses a "flexible carrier sheet," Mr. Dregger's report
asserts the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-07475-MWF (RAO)                **Date:** August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

While Serwin describes its composites in connection with a preferred embodiment arranged on steel plates, it also expressly discloses that in alternate embodiments the plate may be a polymer-plate, a plastic, or a semi-flexible surface with corresponding effects in tension. As for Serwin's plate comprising a polymer-plate or a plastic, the '879 patent discloses that at a time prior to the filing of the '879 patent application, membranes having a flexible carrier sheet were well known (*See, e.g.*, background section of '879 patent, and admitted prior art Wiercinski '520 at Col. 5, ll. 13-17). Also, in connection with Serwin teaching that its plate may be a semi-flexible surface, the term 'semi-flexible' inherently possesses some degree of flexibility, such that, in the broadest reading and understanding thereof, an item that is 'semi-flexible' is inherently a flexible item. Based on the foregoing, it is my opinion that Serwin teaches that its plate may be flexible.

(Defendant's Expert Report and Disclosure of Phillip Dregger at 8).

Critically, Mr. Dregger does not apply the Court's construction of "flexible carrier sheet" – Mr. Dregger does not explain how Serwin discloses "a ***thin*** film, extrusion coating, or fabric." Rather, Mr. Dregger's analysis focuses on explaining how an alternate embodiment of Serwin has "some degree of flexibility." The Court emphasizes the word "***thin***" to demonstrate the flaw in Mr. Dregger's omission of the Court's construction.

A fundamental element of the `879 Patent's novelty is that it no longer requires a removable release sheet to prevent the membrane from adhering to the carrier sheet "when the membrane is rolled up." (`879 Patent at 1:20–21). As common sense requires, the carrier sheet must be both "thin" and "flexible" to be "rolled up." Mr. Dregger's assertion that Serwin's plate, in an alternate embodiment, must have "some degree of flexibility," does not explain how that embodiment expressly or inherently discloses a carrier sheet that is "a thin film, extrusion coating, or fabric." Therefore, Mr. Dregger fails to support his conclusion that Serwin anticipates this element of the

---

**CIVIL MINUTES—GENERAL**                                              **20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)              Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

`879 Patent.  And when facing a clear and convincing evidentiary burden, no reasonable juror could find otherwise.

### ii. *Fensel*

Fensel teaches "[a] method of coating highly reflective granules on an adhering material of a roofing or siding material . . ."  (Fensel at Abstract).  GCP argues that AVM cannot maintain its position of anticipation under Fensel for the same reasons as Serwin – because Mr. Dregger fails to apply the Court's construction of "membrane" and "flexible carrier sheet."  Again, the Court agrees with GCP; and again, the Court demonstrates why by focusing on the "flexible carrier sheet" element.

With respect to Fensel and "flexible carrier sheet," Mr. Dregger states:

Fensel discloses that its base substrate may be a sheet of plastic, and may be semi-rigid. In other words, it is my opinion that the semi-rigid base substrate must also have a certain amount of flexibility, thereby making it a semi-flexible base (carrier sheet). As discussed above in connection with Serwin, a semi-flexible structure is one that has a certain degree of flexibility, making it a flexible structure. Therefore, in my opinion Fensel teaches a base carrier sheet having a degree of flexibility, making it a flexible base carrier sheet.

(Defendant's Expert Report and Disclosure of Phillip Dregger at 12).

Here too, Mr. Dregger fails to explain how a "semi-rigid" base expressly or inherently discloses "a thin film, extrusion coating, or fabric."  Indeed, Fensel appears even less persuasive than Serwin, as it is unclear how a "semi-rigid" base would teach a "thin film, extrusion coating, or fabric" that could be rolled up.

Accordingly, GCP's Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims is **GRANTED** as to no anticipation of the `879 Patent.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

### b.  Obviousness under 35 U.S.C. § 103

A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.  "An obviousness determination requires finding that a person of ordinary skill in the art would have been motivated to combine or modify the teachings in the prior art and would have had a reasonable expectation of success in doing so." *Regents of Univ. of California v. Broad Inst., Inc*., 903 F.3d 1286, 1291 (Fed. Cir. 2018) (citation omitted).  "Whether a person of ordinary skill in the art would have been motivated to modify or combine teachings in the prior art, and whether he would have had a reasonable expectation of success, are questions of fact." *Id*.

Because a determination of obviousness stems from the perspective of "a person having ordinary skill in the art," an unqualified expert may not testify on the issue of obviousness, including the motivation of one of ordinary skill in the art to combine prior art references.  *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688 (Fed. Cir. 2020) (quoting *Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1361–62 (Fed. Cir. 2008)).  Indeed, the Federal Circuit found reversible error when a lay witness was permitted to testify at trial regarding obviousness.  *Id*. at 690–91.

Relatedly, when a party retains an expert to provide testimony regarding obviousness, it must produce an expert report in compliance with Rule 26.  *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp*., 488 F.3d 982, 994 (Fed. Cir. 2007) (stating that evidentiary rulings are not unique under the patent laws); *see also* Fed. R. Civ. P. 26(a)(2)(B) (requiring a retained expert to prepare a complete written report of "all opinions the witness will express and the basis and reasons for them").  The Court requires a written expert report to eliminate unfair surprise to the opposing party and to conserve the parties' resources.  *See U.S. ex rel. O'Connell v. Chapman Univ*., 245 F.R.D. 652, 653 (C.D. Cal. 2007) (discussing the commentary to Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

26(a)).  When experts are involved, "[p]arties are entitled to a *complete* disclosure of all opinions – not a sneak preview of a moving target."  *Pike v. Cnty. of San Bernardino*, No. 17-CV-1680-JGB, 2019 WL 6736908, at *2 (C.D. Cal. July 22, 2019) (emphasis in original) (internal quotation omitted).  In other words, "all expert witnesses at trial must tether their testimony to the contents of their respective reports, and are precluded from exceeding the scope of their reports."  *Vaporstream, Inc. v. Snap Inc*., No. 17-CV-00220-MLH, 2020 WL 978731, at *3 (C.D. Cal. Feb. 28, 2020) (citation omitted).

GCP seeks summary judgment to preclude AVM from arguing that the `879 Patent's dependent claims are invalid as obvious because Mr. Dregger's report fails to specifically address the limitations or validity of any dependent claims.  Because of this, GCP argues that Mr. Dregger must be precluded from testifying at trial about the dependent claims.  In response, AVM argues that Mr. Dregger's report "substantively" addresses all of the limitations recited in the dependent claims, so his testimony should be allowed.

AVM's Opposition marches through each dependent claim and demonstrates how the prior art disclosed in Mr. Dregger's report also pertains to a nested limitation in a dependent claim.  In other words, Mr. Dregger's opinion of invalidity as to the `879 Patent's independent claims necessarily covers the dependent claims because the limitations are a subset of the other.  For example, dependent claims 7 and 8, which are dependent upon independent claim 1, recite that the reflective surface of the membrane exhibits a whiteness value greater than 55% and 65%, respectively.  (`879 Patent at 10:15–21). In Mr. Dregger's report, he opines that both Serwin and Fensel inherently disclose a whiteness value greater than 55%, and that Fensel discloses a reflectivity of at least 65–70%.  AVM's Opposition provides similar examples for each dependent claim.

Here, if the Court were to allow Mr. Dregger to testify as to the invalidity of the dependent claims, GCP would not be "surprised," so long as Mr. Dregger's report mentions the prior art that he relies upon to support his opinions.  If his testimony is limited to these specific prior art references, his testimony will be sufficiently tethered

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 19-07475-MWF (RAO)                **Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

to the content and scope of his report. The Court is unpersuaded that such testimony would ambush GCP at trial, as GCP is already aware of the prior art that Mr. Dregger will reference, which serves the purpose of Rule 26.  *See Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) ("The purpose of [expert reports] is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.").

Importantly, the Court notes that dependent claims are presumed valid even if dependent upon an invalid claim.  *See* 35 U.S.C. § 282(a).  In other words, the Court is not saying that Mr. Dregger can show obviousness without a discussion of the dependent claims.  The Court's ruling merely recognizes that a fact issue remains because Mr. Dregger will not be precluded from testifying on the substance of the dependent claims at trial.

Accordingly, GCP's Motion for Summary Judgment as to No Anticipation and No Obviousness of Dependent Claims is **DENIED** as to no obviousness of dependent claims.

### 2.  AVM's Motion for Summary Judgment of Invalidity of the `879 Patent Under 35 U.S.C. §§ 102 and 103

AVM similarly filed a Motion for Summary Judgment as to Invalidity Under 35 U.S.C. §§ 102 and 103 (Docket No. 122), GCP filed an Opposition (Docket No. 150), and AVM filed a Reply (Docket No. 167).

### a.  Anticipation under 35 U.S.C. § 102

AVM's motion regarding anticipation has already been resolved by the Court's analysis above.  (*See supra*, Part II.B.1.a.).

AVM argues that the `879 Patent is anticipated by Serwin, but as explained, AVM cannot establish anticipation as a matter of law because AVM's expert fails to apply the Court's construction of  "flexible carrier sheet" in his analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

**b.  Obviousness under 35 U.S.C. § 103**

AVM's motion regarding obviousness remains unaffected by the Court's conclusions above.  Still, AVM's argument fails because its expert fails to explain any motivation behind combining specific teachings in the prior art, nor does he explain how a personal of ordinary skill in the art would have had a reasonable expectation of success in combing specific teachings.

First and foremost, the Court highlights the legal burden AVM faces:

> It is black-letter law that a patent is presumed valid under 35 U.S.C. § 282, that a party challenging its validity bears the burden of proving the factual elements of invalidity by ***clear and convincing*** evidence, and that . . . the burden of persuasion never shifts to the patentee during the course of a district court obviousness challenge.

*Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd*., 719 F.3d 1346, 1352 (Fed. Cir. 2013) (internal quotation omitted) (emphasis added).

In AVM's motion, it provides two specific prior art combinations that it asserts invalidate the `879 Patent as obvious.  (*See* Docket No. 123 at 9–25).  The issue, however, is that these specific prior art combinations are fabricated by attorney argument since Mr. Dregger did not take any affirmative position on obviousness.  Mr. Dregger's report disclosed 16 different prior art references, yet he offered no specific combinations of these references to opine on obviousness.

Mr. Dregger's unspecified disclosures are insufficient to support summary judgment – by "clear and convincing evidence" – because to support such a finding, there must be evidence demonstrating that ***a person of ordinary skill in the art*** would have been motivated to combine or modify the teachings in the prior art.  In other words, Mr. Dregger must explain how he or someone with similar qualifications would have been motivated to come up with certain combinations or modifications.  Based on Mr. Dregger's report, there are literally more than a trillion possible combinations. Because Mr. Dregger fails to make any specific combinations, his references to

---

**CIVIL MINUTES—GENERAL**                                               **25**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

motivation are necessarily conclusory and speculative.  This alone causes AVM's argument to fail when facing a clear and convincing evidentiary burden.

Moreover, the Court is also inclined to deny the motion to discourage the prejudicial effects of AVM's approach.  By failing to offer any specific combinations of prior art references prior to its motion, AVM has marginalized the use of GCP's rebuttal expert report.  It would be unfair and unrealistic for GCP's expert to opine on the deficiency of more than a trillion prior art combinations.

Accordingly, AVM's Motion for Summary Judgment of Invalidity of the `879 Patent Under 35 U.S.C. §§ 102 and 103 is **DENIED**.

### C.    Inequitable Conduct

GCP and AVM filed dueling motions on invalidity for inequitable conduct.  The parties seem to generally agree on the underlying facts, but their inferences and conclusions vastly differ.

#### 1.  Background facts

Obtaining the `879 Patent was a joint effort between (1) GCP's predecessor-in-interest, W.R. Grace & Co. – Conn. ("Grace"); (2) Dr. Wiercinski, the inventor; and (3) Grace's patent attorney, Mr. Craig Leon.  During the Patent's prosecution, the PTO examiner initially rejected certain claims.  The examiner rejected claims that taught "substantially reflective particles" because she thought they were obvious under U.S. Patent 5,496,615 ("Bartlett").  At this time, both the `879 Patent application and Bartlett were owned by Grace.

Attorney Leon responded to the rejection, arguing that Bartlett did "not teach or suggest that it is desirable to have a reflective surface with a high whiteness value.  In fact, Bartlett teaches away from this feature. . . .".  However, Leon failed to disclose the existence of Preprufe® 300R/160R – the commercial embodiment of Bartlett.  Preprufe® 300R/160R, like the `879 Patent, is a waterproofing membrane sold by Grace that includes, among other things, a reflective surface.  After Leon's response,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

the PTO examiner allowed the initially rejected claim terms to issue as those in the `879 Patent.

        At bottom, AVM argues that Leon's failure to disclose the Preprufe® 300R/160R membrane and technical datasheets to the PTO amounts to a finding of inequitable conduct.

## 2.  Legal standard

        Inequitable conduct is an equitable defense to patent infringement that applies when the patent's issuance was gained through misconduct.  However, the Federal Circuit has described charges of inequitable conduct as "an absolute plague," that appears in roughly eighty percent of patent infringement cases.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citation omitted).  "[T]he inequitable conduct doctrine has plagued not only the courts but also the entire patent system," because now patent prosecutors will disclose too much prior art for the PTO to meaningfully consider, all out of fear of being charged with inequitable conduct.  *Id*.  In response, the Federal Circuit tightened the standards for finding both intent and materiality "in order to redirect a doctrine that has been overused to the detriment of the public."  *Id*. at 1290.

        "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO."  *Id*.  "In a case involving nondisclosure of information, ***clear and convincing*** evidence must show that the applicant made a deliberate decision to withhold a known material reference."  *Id.* (citation omitted) (emphasis added).  "In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."  *Id*.

        "[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Id*. at 1291.  Moreover, "[t]he patentee's intent to deceive must be the 'single most reasonable inference able to be drawn from the evidence.'"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)              Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co*., 731 F.3d 1239, 1242 (Fed.
Cir. 2013).

### 3.  GCP's Motion for Summary Judgment as to No Inequitable Conduct

GCP filed a Motion for Summary Judgment as to No Inequitable Conduct
(Docket No. 136), AVM filed an Opposition (Docket No. 145), and GCP filed a Reply
(Docket No. 174).

GCP's motion argues that AVM, who bears the burden of proof at trial, lacks
clear and convincing evidence of inequitable conduct, and therefore summary
judgment is appropriate.  GCP makes two independent arguments:  (1) there is no "but-
for" materiality; and (2) AVM cannot prove intent by an "individual."

### a.  "But-for" materiality

Prior art is but-for material if "the PTO would not have allowed a claim had it
been aware of the undisclosed prior art."  *Therasense, Inc*., 649 F.3d at 1291.  In other
words, "the court must determine whether the PTO would have allowed the claim if it
had been aware of the undisclosed reference."  *Id*.  Failing to disclose a prior art
reference constitutes affirmative misconduct only when there is proof of but-for
materiality.  *Id*. at 1293.

GCP argues that AVM lacks evidence of but-for materiality because Grace's
Preprufe® product is cumulative to other evidence before the examiner, specifically
the Bartlett patent.  Preprufe® 300R/160R is the commercial embodiment of Bartlett,
and Bartlett was already before the examiner.  In GCP's view, it would be cumulative
to provide the examiner with both Bartlett and its commercial embodiment, and the
reflectivity of Preprufe® is irrelevant.  This is so because Bartlett provides for
"titanium dioxide" in its protective coating, which is a highly reflective, white pigment
material commonly used in sunscreen.  Therefore, in direct conflict with attorney

---

**CIVIL MINUTES—GENERAL**                                              28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

Leon's representation to the examiner, GCP now argues that Bartlett discloses a
reflective or white surface.

AVM argues that GCP's reversal is nonsensical as Bartlett is nonreflective, and
in at least one example, Bartlett teaches putting carbon black in the protective coating.
Moreover, Mr. Dregger tested the Preprufe® 300R/160R and the products exhibited an
average reflectivity reading of nearly 80%, which is squarely within the bounds of the
`879 Patent.  In other words, Bartlett does not teach a reflective surface, but Preprufe®
does.  So if Leon would have disclosed Preprufe® to the examiner, the `879 Patent
would not have issued.  This alone is sufficient to create a fact issue as to but-for
materiality.  *See Donaldson Co. v. Pneumafil Corp*., 824 F.2d 979 (Fed. Cir. 1987)
(affirming a finding of inadequate conduct where a commercial embodiment was
withheld and its features were highly material to disputed claim terms).

**b.  Intent by an "individual"**

Alternatively, GCP argues that AVM's inequitable conduct charge fails as a
matter of law because AVM lacks clear and convincing evidence that one specific
individual both (1) knew that Preprufe® was material *and* (2) deliberately concealed it
from the PTO.  To meet its burden, AVM must demonstrate that a "specific individual"
committed the misconduct because only individuals, rather than corporations, owe a
duty of candor to the PTO, and this duty applies individually to each person associated
with the filing and prosecution of a patent application.  *Avid Identification Sys., Inc. v.
Crystal Imp. Corp*., 603 F. 3d 967, 974 n.1 (Fed. Cir. 2010) (citing *Exergen Corp. v.
Wal-Mart Stores, Inc*., 575 F.3d 1312, 1328 (Fed. Cir. 2009)); *see also* 37 C.F.R.
§ 1.56.

At the hearing, AVM said that both attorney Leon and Dr. Wiercinski qualify as
specific individuals who both knew Preprufe® was material and both deliberately
concealed it from the PTO.  But after a close review of the evidence, it appears that
AVM imputes Dr. Wiercinski's knowledge of Preprufe® to attorney Leon and imputes
Leon's decision to withhold Preprufe® to Dr. Wiercinski.  *See Baxalta Inc. v. Bayer
Healthcare LLC,* No. CV 17-1316-RGA-SRF, 2020 WL 5445375, at *5 (D. Del. July

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

13, 2020) (noting that an inequitable conduct pleading is insufficient where it alleges a "mishmash of facts without sorting them out in relation to particular acts of particular individuals.") (citation omitted).

For example, AVM concludes its Opposition by stating:

(1) Attorney Leon and inventor Wiercinski knew of the prior art Preprufe® 300R/160R membranes; (2) Attorney Leon and inventor Wiercinski knew the Preprufe® 300R/160R membranes had a "substantially reflective surface" exhibiting a whiteness/reflectivity value of greater than 55% and were material prior art; and (3) Attorney Leon and inventor Wiercinski made a deliberate decision to withhold Preprufe® 300R/160R membranes.

The evidence, however, reveals that AVM is stitching the record together by improperly sharing facts specific to the individuals.  For example, in AVM's Opposition to GCP's Motion re No Inequitable Conduct, AVM argues that Leon was aware of the Preprufe® membranes at the time he made his arguments to the PTO, but to support this contention, AVM cites to the deposition testimony of Dr. Wiercinski. (*Id*. at 15).

Critically, AVM failed to even depose Leon.  At the hearing, AVM's counsel claimed that this was because discovery had closed by the time they realized his testimony would be valuable.  But this assertion is unsupported by the record, and AVM never once sought relief from the Court to extend the discovery period.  When seeking to prove inequitable conduct by clear and convincing evidence, this failure is fatal to AVM's argument.

Accordingly, GCP's Motion for Summary Judgment as to No Inequitable Conduct is **GRANTED**.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

### 4.  AVM's Motion for Summary Judgment as to Unenforceability

AVM filed a dueling Motion for Summary Judgment as to Unenforceability (for
inequitable conduct) (Docket No. 125), GCP filed an Opposition (Docket No. 151),
and AVM filed a Reply (Docket No. 168).

AVM and GCP repeat the same arguments analyzed above.  For the reasons
already stated, and because the record is insufficient to show clear and convincing
evidence of intent, AVM's motion is **DENIED**.

### D.    Partial Summary Judgment for Lost Profit Damages and Leave to Submit Evidence Not Timely Filed

AVM filed a Motion for Partial Summary Judgment as to Non-Entitlement to
Lost Profits (the "Lost Profits Motion") (Docket No. 128), GCP filed an Opposition
(Docket No. 155), and AVM filed a Reply (170-1).

Relatedly, to introduce evidence in support of its Lost Profits Motion, AVM
filed a Motion for Leave to Submit Evidence Inadvertently Not Timely Filed (the
"Motion for Leave") (Docket No. 139).  GCP filed an Opposition (Docket No. 161),
AVM filed a Reply (Docket No. 176), and GCP filed a Sur Reply (Docket No. 182).

The Court will address both motions in this section.

### 1.  AVM's Lost Profits Motion

GCP is pursuing multiple lost profits theories in this case:  (1) lost profits based
on a market share analysis; (2) lost profits based on a job-by-job analysis; and (3) lost
profits based on alleged price erosion.  (Doan Report (Docket No. 133-12)).

As clarified on Reply, AVM seeks summary judgment only as to GCP's ability
to seek lost profits through a job-by-job analysis.  At the hearing, GCP's counsel
confirmed that this approach is GCP's alternative damages theory, as GCP's economic
expert only briefly mentions a job-by-job calculation in a footnote.  (Doan Report ¶ 65

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)              Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

n.254).  To be clear, GCP's primary lost profits theory will be demonstrated through a
market share analysis, and AVM does not challenge this approach.

Put simply, under a job-by-job approach, GCP would have to demonstrate that
AVM and GCP's products were competing on a specific project, and absent AVM's
accused products, AVM's customers would have chosen GCP's products over other
available non-infringing alternatives.  AVM argues that GCP should be precluded from
pursuing this approach because there is insufficient evidence to show that, in the
absence of AVM's accused products, GCP would have made AVM's sales on the
*specific projects* alleged.

To recover lost profits for patent infringement, the patentee must show a
reasonable probability that, "but for" the infringement, it would have made the
infringer's sales.  *Dexcowin Global, Inc. v. Aribex, Inc.*, 2017 WL3477747 (C.D. Cal.
June 1, 2017) (citing *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed.
Cir. 1995)).  The four-factor *Panduit* test sets the requirements for proving "but-for"
causation.  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.
1978).  The patentee must show: (1) demand for the patented product; (2) an absence
of acceptable non-infringing alternatives; (3) manufacturing and marketing capability
to exploit the demand; and (4) the amount of profit it would have made.  *Id.* at 1156.
AVM argues that GCP is unable to meet its burden of proof with respect to the first
and second factors.

### 2. *Panduit* factors

### a. Demand for the patented product

GCP's damages expert asserts that demand for the patented product is
established based on three factors:  (1) the '879 Patent conveys significant benefits; (2)
there is evidence of demand for GCP's PV100 product, which practices the '879 Patent;
and (3) sales of AVM's White Products provide evidence of demand for the patented
technology.  (Doan Report ¶¶ 47–51).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

To rebut the first point, AVM argues that it was competing effectively prior to making alterations to its White Products (using silica sand particles instead of concrete).  According to AVM, the Patent cannot convey significant benefits because its sales were not improved by the infringing changes made to the White Products products.

GCP responds by arguing that AVM is imposing a higher burden than the law requires – the *Panduit* test considers demand for the patented product as a whole rather than viewing the patented features in isolation.  *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 410017, at *3 (N.D. Cal. Feb. 3, 2016) ("[defendant's] challenge to factor one of *Panduit* is based upon the ***mistaken*** view that factor one requires demand for the patented feature and not just the patented product.") (emphasis added).  GCP states that AVM has generated $15.6 million in revenue from selling allegedly infringing products, which alone establishes the demand element.

The Court agrees with GCP on this point and notes that AVM did not return to this argument in its Reply.

## b.  Absence of acceptable non-infringing alternatives

The market for waterproofing membrane products is wide ranging.  Different membrane technologies provide different options for construction projects.  In addition to GCP and AVM, there at least four additional competitors in the "adhesive bond" category in North America that provide comparable waterproofing membrane solutions.  (Lost Profits Reply at 7) (naming alternative products).

GCP's Preprufe® products are considered a "premium" solution in the market and are priced higher than its competitors.  (Doan Report ¶ 25).  Because of this, AVM argues that, in the absence of its accused products, customers still would not have upgraded to GCP's "premium" product; instead, they would have chosen a similarly low-priced competitor to undercut GCP's pricing.  In response, GCP claims that AVM specifically targets GCP's Preprufe® products by marketing the accused products as

___

CIVIL MINUTES—GENERAL                                         33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 19-07475-MWF (RAO)**                **Date:  August 5, 2022**
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

"substitutes."  Additionally, GCP argues that there is no dispute that the Preprufe® products and the accused products are most similar in the marketplace.

Under the *Panduit* test, the correct inquiry is whether a non-infringing alternative would be acceptable compared to the patent owner's product.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). Therefore, the "but for" inquiry "requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what sales the patentee would have made."  *Id.* (internal quotation omitted).

When it comes to a job-by-job analysis, GCP offers only a single spreadsheet to support its theory.  (Bates No. GCP00069569 ("Exhibit 88") (Docket No. 133-10)). Exhibit 88 ostensibly represents certain projects where AVM undercut business from GCP using its accused products.  The entire document is just three pages long, and it lists projects by name, location, date, size, installer, and "value" measured by gross dollar values.  It is unclear from the document how the "value" column is determined.

Critically, Exhibit 88 fails to provide any additional details of these "competitive" projects.  For example, it is entirely unclear whether AVM and GCP were competing head-to-head, or whether there were alternative non-infringing products bidding for the project too.  During the deposition of GCP's Rule 30(b)(6) witness designated to testify on "any lost sales or lost profits," GCP's representative testified that he had no knowledge of the bidding process for any of the projects listed in Exhibit 88.  GCP's representative stated that, in each project listed, "AVM was [either] the primary competition or the only competition, and I can't say which." (Greg Austin Deposition 171:4–6 (Docket No. 133-17)).

Because GCP has failed to introduce sufficient evidence to reconstruct the marketplace under a job-by-job analysis, it cannot pursue this theory at trial. According, AVM's Motion for Partial Summary Judgment as to Non-Entitlement to Lost Profits is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

### 3.  Leave to Submit Evidence Not Timely Filed

AVM asserts that it inadvertently failed to submit evidence with its Lost Profits Motion and seeks leave to file additional declarations that provide details of the specific projects listed in Exhibit 88, including whether other waterproofing competitors were active in the bidding process.

Because the Court resolved AVM's Lost Profits Motion without this evidence, AVM's Motion for Leave to Submit Evidence Inadvertently Not Timely Filed is **DENIED** *as moot*.

### E.    International Shipments

AVM filed a Motion for Partial Summary Judgment to Finding No Infringement in Relation to International Shipments (Docket No. 129), GCP filed an Opposition (Docket No. 156), and AVM filed a Reply (Docket No. 170-2).

Section 271(a) of the patent statute provides in relevant part that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a).  Importantly, United States patent laws only operate domestically and do not extend to foreign activities. *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455 (2007).  "[T]he general rule under United States patent law [is] that no infringement occurs when a patented product is made and sold in another country."  *Id*. at 437.

AVM sells 9.1% of its accused products to customers in Canada.  The products are manufactured in China, shipped to independent distributors in Canada, and are sold by Canadian distributors to end users in Canada.  The products never physically cross any United States borders.  The products bound for Canada only have one connection to the United States:  when the independent Canadian distributors place product orders, the orders are processed by AVM employees in the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                    Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

On this basis, AVM's Motion seeks summary judgment on GCP's claims of infringement under § 271(a) for accused products that were sold for use in Canada. Because the Canadian-bound products are largely unconnected to the United States, AVM argues that it does not "sell" the Canadian-bound products in the United States in violation of § 271(a).

According to the Federal Circuit, a defendant does not "sell" accused products in the United States for purposes of liability under § 271(a) if (1) the products were manufactured, shipped, and delivered to buyers abroad; and (2) the substantial activities leading to such sales occurred abroad. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379 (Fed. Cir. 2014), *rev'd on other grounds by* 579 U.S. 93 (2016) (applying Ninth Circuit law).  In *Halo*, the panel explained as follows:

> Although the place of contracting may be one of several possible locations of a sale to confer personal jurisdiction, we have not deemed a sale to have occurred within the United States for purposes of liability under § 271(a) based solely on negotiation and contracting activities in the United States when the vast majority of activities underlying the sales transaction occurred wholly outside the United States. For such a sale, one must examine whether the activities in the United States are sufficient to constitute a "sale" under § 271(a), recognizing that a strong policy against extraterritorial liability exists in the patent law.
>
> .     .     .
>
> Consistent with all of our precedent, we conclude that, when substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:        GCP Applied Technologies Inc. v. AVM Industries, Inc.

*Id*. at 1378–79.  The *Halo* panel affirmed the district court's summary judgment ruling that excluded extraterritorial sales, concluding that "[a]ny doubt as to whether [the defendant's] contracting activities in the United States constituted a sale within the United States under § 271(a) is resolved by the presumption against extraterritorial application of United States laws."  *Id*. at 1380.

In response, GCP argues that AVM provides a mistaken impression that the Federal Circuit foreclosed any possibility of infringement for products shipped by international distributors to international customers.  GCP points to a footnote in *Halo* in which the panel explained that "it need not reach Halo's argument that the place where a contract for sale is legally formed can itself be determinative as to whether a sale has occurred in the United States" because the panel agreed with the district court that the domestic sales activities did not constitute the final formation of a definitive, binding contract for sale.  *Id*. at 1379 n.1.

Although *Halo* does not explicitly say whether the parties' contracting location is determinative, it provides sufficient guidance for the Court to determine the issue here.  That is, whether AVM's sales activities in the United States are substantial enough to give rise to liability under § 271(a) when the accused products are manufactured, shipped, and delivered abroad.

As to sales activities, GCP asserts that title to the accused products technically passes to AVM before being passed to its Canadian distributor, that AVM confirms certain sale details from the United States, and that AVM receives payment in the United States.  In support of its argument, GCP cites *MediaTek v. Freescale Semiconduct, Inc.*, a case where a district court declined to follow *Halo* because it found "tangible evidence of a sales relationship between two U.S. companies. . . ." No. 11-cv-5341, 2014 WL 580836, at *4 (N.D. Cal. 2014).  But a key factual difference distinguishes *MediaTek*:  there the contracting parties were both based in the United States; here, however, AVM is contracting with an individual ***Canadian*** distributor.  Accordingly, this action provides no such domestic sales relationship.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                Date:  August 5, 2022
Title:      GCP Applied Technologies Inc. v. AVM Industries, Inc.

Here, as in *Halo*, the vast majority of AVM's sales activities underlying the Canadian transactions took place wholly outside of the United States, so the Canadian sales cannot create liability under § 271(a).  Also, as in *Halo*, any doubts in this conclusion are resolved by the presumption against the extraterritorial application of the patent laws.  "As the Supreme Court has stated on multiple occasions, our patent system makes no claim to extraterritorial effect; these acts of Congress do not, and were not intended to, operate beyond the limits of the United States, and we correspondingly reject the claims of others to such control over our markets."  *Halo*, 769 F.3d at 1380 (collecting cases) (internal quotation marks omitted).

Accordingly, AVM's Motion for Partial Summary Judgment to Finding No Infringement in Relation to International Shipments is **GRANTED**.

### F.      **Enhanced Damages and Attorneys' Fees**

AVM filed a Motion for Partial Summary Judgment as to Finding No Basis for Enhanced Damages Nor Attorney Fees (Docket No. 130), GCP filed an Opposition (Docket No. 159), and AVM filed a Reply (Docket No. 170-3).

Under certain situations, United States patent law allows for an award of enhanced damages or an award of attorney fees to the prevailing party.  If a court finds that there was willful infringement, it may increase "damages up to three times the amount found or assessed."  35 U.S.C. § 284.  Similarly, in "exceptional cases," the Court "may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.

AVM argues that GCP has not presented evidence of willful infringement, and therefore, a finding of enhanced damages under 35 U.S.C. § 284 or an award of attorneys' fees and costs under 35 U.S.C. § 285 would be unsupported.  AVM argues that GCP cannot prove willful infringement because (1) AVM had no knowledge of the `879 Patent prior to this suit; (2) AVM's actions were well within the standards of commerce for the industry; (3) no evidence shows that AVM intentionally copied GCP's commercial embodiment of the `879 Patent (PV100 product); (4) AVM had a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-07475-MWF (RAO)                 Date:  August 5, 2022
Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

reasonable basis to believe it did not infringe; and (5) AVM made a good faith effort to
design around the `879 Patent's limitations.

        GCP rebuts the motion by injecting factual disputes into AVM's argument and
claiming that the motion itself is premature.  As to the factual disputes, GCP attributes
knowledge of the `879 Patent to former GCP employees who now work at AVM.  The
allegations are vague, and AVM notes that GCP did not pursue any of these theories in
discovery.

        GCP does, however, identify that AVM had a copy of the `879 Patent in its
possession in 2017.  During discovery, AVM produced a copy of the Patent in a
document titled, "Letter to Canlon from GCP US8713879(1).pdf," which was created
on June 24, 2017, and it was last modified *on the same date*.  This fact alone creates a
genuine issue of material fact as to whether AVM's infringement was willful.

        GCP additionally argues that this motion is premature because willfulness is a
question for the jury and the Court's decision as to enhanced damages and willfulness
is to be decided under a totality of the circumstances, including what happens at trial.
The Court agrees.

        "Willfulness of behavior is a classical jury question of intent. When trial is had
to a jury, the issue should be decided by the jury." *Richardson v. Suzuki Motor Co*.,
868 F.2d 1226, 1250 (Fed. Cir. 1989).  Moreover, as to enhanced damages, that
determination should be made when viewing the litigation as a whole, *i.e.*, after trial.
*GEMAK Tr. v. Reckitt Benckiser, LLC,* No.18-1855-RGA, 2021 WL 1751339, at *1
(D. Del. May 4, 2021) (denying summary judgment of no enhanced damages,
explaining that "[t]he request for no enhanced damages is dismissed as premature,
inasmuch as the time for consideration of enhanced damages is post-trial").

        AVM's request to preclude an award of attorneys' fees is premature as well.
"Criteria for declaring a case exceptional [and awarding attorney's fees] include willful
infringement, bad faith, litigation misconduct, and unprofessional behavior." *nCube
Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006).  Because

CIVIL MINUTES—GENERAL                                                        39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-07475-MWF (RAO)**                    **Date:  August 5, 2022**

Title:       GCP Applied Technologies Inc. v. AVM Industries, Inc.

willfulness is a question for the jury and the Court cannot exclude the possibility of future misconduct as a matter of law, any determination on attorneys' fees is premature.

Accordingly, AVM's Motion for Partial Summary Judgment as to Finding No Basis for Enhanced Damages Nor Attorney Fees is **DENIED**.

IT IS SO ORDERED.