Douglas G. Muehlhauser (SBN 179495)
doug.muehlhauser@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone:       (949) 760-0404
Facsimile:   (949) 760-9502

Peter W. Peterson (*pro hac vice*)
Robert Curcio (*pro hac vice*)
David R. Pegnataro (*pro hac vice*)
Brian G. Schlosser (*pro hac vice*)
delpet@delpet.com
DeLIO PETERSON & CURCIO LLC
700 State Street, Suite 402
New Haven, Connecticut 06511
Phone:       (203) 787-0595
Facsimile:   (203) 787-5818

Attorneys for Defendant
AVM INDUSTRIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GCP APPLIED TECHNOLOGIES INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>AVM INDUSTRIES, INC.,<br><br>                    Defendant. | Case No. 2:19-cv-07475-MWF-RAO<br><br>Hon. Michael W. Fitzgerald<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION PURSUANT TO L.R. 7-18**<br><br>Hearing<br>Date:     October 3, 2022<br>Time:    10:00 am<br>Ctrm:   5A |

# TABLE OF CONTENTS

**Page No(s).**

I. INTRODUCTION ................................................................. 1

II. BACKGROUND ............................................................... 1

III. LEGAL STANDARDS ..................................................... 2

IV. ARGUMENT ................................................................... 3

    A.    The Court erred in applying the maxim of *Rhine v. Casio* to sustain the validity of claim 1 of the '879 Patent ................... 3

    B.    The Court erred in interpreting claim limitations under its Indefiniteness analysis to sustain the validity of claim 1 of the '879 Patent .......................................................................... 11

        a.    "outer exposed surface" of the "pressure sensitive adhesive" ............................................................. 11

        b.    "pressure sensitive adhesive has an average thickness" ...... 15

    C.    In granting GCPs' Motion for Summary Judgment as to Infringement of Certain Accused Products, the Court has failed to consider material facts presented to it which create genuine disputes of material fact. ........................................ 15

    D.    In granting GCP's Motion for Summary Judgment as to No Inequitable Conduct, the Court failed to consider material facts presented regarding the knowledge of Inventor Wiercinski and Attorney Leon. ........................................... 16

    E.    In granting *in part* GCP's Motion for Summary Judgment as to No Anticipation, the Court failed to consider material facts presented regarding the disclosure of U.S. Patent No. 7,776,432 ("Serwin") ........................................................ 20

V. CONCLUSION ................................................................ 23

TABLE OF AUTHORITIES

Page No(s).

**Cases**

*389 Orange St. Partners v. Arnold*,
  179 F.3d 656 (9th Cir. 1999) ........................................................................ 2

*Abbott Laboratories v. Grifols Diagnostic Solutions Inc.*,
  2022 WL 1237929 (N.D. Illinois April 27, 2022) .......................................... 8

*Am. Piledriving Equip, Inc. v. Geoquip, Inc.*,
  637 F.3d 1324 (Fed. Cir. 2011) .................................................................... 10

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ...................................................................... 5

*Beckson Marine, Inc. v. NFM, Inc.*,
  292 F.3d 718, 63 U.S.P.Q.2d 1031 (Fed. Cir. 2002) ..................................... 21

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001) .................................................................... 22

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ............................................................... 4, 5, 8

*Dow Chem. Co. v. Nova Chem. Corp.*,
  803 F.3d 620 (Fed. Cir. 2015) ........................................................................ 4

*Electrolysis Prevention Solutions, LLC v. Daimler Trucks North America LLC*,
  2022 WL 1415669 (W.D.N.C. May 4, 2022) .................................................. 3

*Enzo Biochem, Inc. v. Applera Corp.*,
  599 F.3d 1325 (Fed. Cir. 2010) .................................................................... 22

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001) ...................................................................... 3

*FMC Corp. v. Hennessy Industries, Inc.*,
  836 F.2d 521 (Fed. Cir. 1987) ...................................................................... 18

# TABLE OF AUTHORITIES
### *(cont'd.)*

**Page No(s).**

*Gish v. Newsom*,
    EDCV 20-755-JGB (KKx), 2020 WL 6054912 (C.D. Cal. Oct. 9, 2020) ....... 3

*In re Johnston*,
    435 F.3d 1381 (Fed. Cir. 2006) ...................................................... 20

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014) ...................................................... 4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ................................................... 8, 10

*Markman v. Westview Instrs., Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ........................................................ 7

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ........................................................ 2

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015) ................................................. 4, 10

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*,
    75 F.3d 1545 (Fed. Cir. 1996) ...................................................... 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 134 S. Ct. 2120 (2014) .......................................... 3, 4

*Novo Nordisk Pharms., Inc. v. Bio–Technology Gen. Corp.*,
    424 F.3d 1347 (Fed. Cir. 2005) .................................................... 18

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................. 3, 4, 7

*Rhine v. Casio, Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999) ................................................ 3, 10

# TABLE OF AUTHORITIES
## *(cont'd.)*

**Page No(s).**

*Synthon IP, Inc. v. Pfizer Inc.*,
  472 F. Supp. 2d 760 (E.D. Va. 2007), *aff'd in part,* 281 F. App'x 995 (Fed. Cir. 2008) ................................................................................................. 18

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ....................................................... 19

*TransWeb, LLC v. 3M Innovative Properties Co.*,
  812 F.3d 1295 (Fed. Cir. 2016) ................................................. 17, 18

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*,
  234 F.3d 1370 (Fed. Cir. 2000) ......................................................... 4


**Rules**
Local Rule 7-18 ................................................................................. 2

## I.  INTRODUCTION

Defendant AVM Industries, Inc. ("AVM") respectfully submits that the Court failed to consider material facts presented to it in considering the parties' Motions for Summary Judgment and exceeded its role in construing the '879 Patent to preserve validity. Specifically, for the reasons herein, defendant AVM respectfully requests that the Court reconsider its Order denying AVM's Motion for Summary Judgment as to Invalidity for Indefiniteness (Dkt. 116), granting *in part* plaintiff GCP Applied Technologies, Inc.'s ("GCP") Motion for Summary Judgment as to No Anticipation (Dkt. 134), and granting GCP's Motion for Summary Judgment as to Infringement of Certain Accused Products (Dkt. 135) and Motion for Summary Judgment as to No Inequitable Conduct (Dkt. 136). Dkt. 201 at 12, 16, 21 and 30.

The Court determined as a threshold matter that the claim limitations related to the pressure sensitive adhesive (PSA) are measured at a point after the adhesive is spread on the carrier sheet but ***before*** the application of inorganic particles. Dkt. 201 at 9 (emphasis in original). In so determining, the Court improperly redefined these claim limitations to preserve the validity of the '879 Patent, which in turn influenced the analysis of AVM's motions regarding indefiniteness and infringement. Moreover, the Court failed to consider material facts in granting GCP's Motions for Summary Judgment as to No Anticipation and No Inequitable Conduct, such that triable issues remain with respect to anticipation and enforceability.

## II.  BACKGROUND

Plaintiff GCP and Defendant AVM filed a total of ten Motions for Summary Judgment or partial Summary Judgment in this matter, three by plaintiff GCP and seven by defendant AVM. On the issues of anticipation, infringement and inequitable conduct, the parties have in effect filed cross-motions with

overlapping or intersecting arguments. A hearing on all pending motions was held by video conference on February 16, 2022. By Order dated August 5, 2022 and entered August 8, 2022, the Court granted, in relevant part, plaintiff GCP's Motion for Summary Judgment as to Infringement of Certain Accused Products, Motion for Summary Judgment as to No Anticipation, and Motion for Summary Judgment as to No Inequitable Conduct, and denied defendant AVM's Motion for Summary Judgment as to Indefiniteness. Triable issues remain, at present, with respect to: (1) infringement as to certain AVM G-Series products, (2) invalidity for obviousness, and (3) damages.

## III. LEGAL STANDARDS

Local Rule 7-18 of the Central District of California states:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

L.R. 7-18.

A motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted). The movant bears the burden of proving that reconsideration is proper. See *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). "Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b)." *Gish v. Newsom*, EDCV

20-755-JGB (KKx), 2020 WL 6054912, at *2 (C.D. Cal. Oct. 9, 2020).

## IV.   ARGUMENT

**A.     The Court erred in applying the maxim of *Rhine v. Casio* to sustain the validity of claim 1 of the '879 Patent**

The doctrine of construing claims to preserve their validity is one of "limited utility," which is "limited… to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.' " *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327, 1328 (Fed. Cir. 2005) (internal citations omitted). See also, *Electrolysis Prevention Solutions, LLC v. Daimler Trucks North America LLC*, 2022 WL 1415669 at *6 (W.D.N.C. May 4, 2022) (stating that Federal Circuit has found that the *Rhine* doctrine is of limited utility and has no applicability when the claim term at issue is not ambiguous).

At the time of the *Rhine*[1] case, the Federal Circuit's standard for validity and indefiniteness was "when claims are amenable to more than one construction, they should when reasonably possible be interpreted to preserve their validity." *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996). This was subsequently approved by the U.S. Supreme Court's "insolubly ambiguous" standard, where a claim was indefinite only if no narrowing construction could properly be adopted. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.")

However, this standard was radically changed in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S. Ct. 2120 (2014), and the "reasonable persons will disagree" standard no longer applies. The proper test is now that the

---

[1] *Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999)

claims must "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. "The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Nautilus*, 134 S. Ct. at 2130).

If the intrinsic evidence of the specification and the prosecution history does not provide sufficient guidance for one to discern between multiple alternative constructions, then the patent claim may be found indefinite. *Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620, 630–31 (Fed. Cir. 2015) (finding the claim language "slope of strain hardening coefficient" was indefinite in view of multiple methods of measuring the "slope"); *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) ("a claim is indefinite if its language might mean several different things and no informed and confident choice is available among the contending definitions" (internal quotations marks omitted)).

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  Here, the claim format is clear and unmistakably to the completed membrane article. None of the asserted claims recite a process or method of measuring adhesive thickness of the claimed membrane, and therefore, based on the plain language, the claims are not limited to measurement at an intermediate manufacturing step prior of application of the inorganic particles, as found by the Court.

Generally, "[a] novel product that meets the criteria of patentability is not limited to the process by which it was made." *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372–73 (Fed. Cir. 2000). "However, process steps can be treated as part of a product claim if the patentee has ***made clear*** that the process steps are an ***essential part of the claimed invention***." See *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 799 (Fed. Cir. 2019) (emphasis added)

-4-

(citing *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1375 (Fed. Cir. 2007).

Here, as in *Continental Circuits*, the claims at issue are product claims, and the fundamental dispute is whether a process limitation should be read into the claims. *Continental Circuits LLC*, 915 F.3d at 794. This Court found that "the ['879] Patent's intrinsic evidence informs a person of ordinary skill that the limitations of the pressure sensitive adhesive are measured at a point after the adhesive is spread on the carrier sheet but ***before*** the inorganic particles are applied." Dkt. 201 at 9 (emphasis in original). The Court states that it so found based on two factors, neither of which make clear that the process of measuring adhesive thickness at an intermediate step of manufacturing is "an essential part" of the claimed invention.

First, the Court notes that the specification "completely describes the uniformity and the thickness of the adhesive layer before and independently of the particles. The particle limitations are recited afterward and only said to be adhered to the outer exposed surface of the pressure sensitive adhesive. A natural reading, therefore, provides the limitations of the adhesive layer and the particles independently of one another, and at an intermediate stage before the two components are adhered together." Dkt. 201 at 9 (internal citations omitted). Although the Court cites this order of description as being evidence that "the thickness and uniformity of the adhesive layer are determined at an intermediate point of manufacture before the particles are applied," *id*., AVM notes that the Court has failed to consider the material fact that the order is also consistent with the recitation of the description of the ***finished membrane article*** from bottom-to-top. Pursuant to the Court's reasoning, referring to the '879 Patent at 3:49–64, nowhere in this passage are method steps disclosed or implied, or that such layers are being described only with respect to an intermediate point of manufacture. On the contrary, this passage can be read as describing the membrane in past tense

-5-

form after manufacture, as the substantially reflective inorganic particles are described as being already "adhered" to the adhesive layer ('879 Patent 3:56–58). As such, in reading this passage it is also reasonable that a person of ordinary skill would understand that the final waterproofing membrane product is being described with respect to each of its layers in order from bottom-to-top of the final membrane product.

Second, the Court cites to Example 1, finding that the "order of events, and a lack of measurements taken after applying the particles, supports the Court's conclusion that thickness and uniformity of the adhesive layer are determined at an intermediate point of manufacture before the particles are applied." *Id*. It is the Court's opinion that the cited intrinsic evidence indicates, at best, one acceptable method of analyzing the adhesive layer claim limitations. However, Example 1 never actually discloses that the adhesive thicknesses taught therein are taken before applying the particles (i.e., at an intermediate stage of manufacture). Rather, it merely discloses membranes having three different thicknesses were tested, and as such, it is reasonable that a person of ordinary skill would read the adhesive thicknesses in Example 1 as being those of the completed membrane article. Dkt. 131-5, Ex. 120, Dregger Reb. ¶42. Moreover, GCP's expert Mr. Stieve testified that he did not independently read the '879 Patent claim as calling for adhesive thickness to be determined prior to application of the inorganic particles. Instead, he was ***instructed*** by GCP that the so-called "solvent method"[2] was the "correct method" to determine the "average thickness" of the adhesive layer in the portions on which inorganic particles are adhered. Dkt. 131-4, Ex. 116, Stieve Dep. 42:20-23. He also testified that "I don't think there is a correct method, because there is no method specified in the patent." *Id*. at 43:3-5. Finally,

---

[2] The "solvent method" assumes uniformity and does not measure the amount of adhesive as initially applied to the carrier sheet; rather, it derives a measurement based on the amount of adhesive that ***remains*** on the completed membrane article.

he testified that persons of ordinary skill in the art would think that there is more than one method that might be used to measure adhesive thickness:

> Q.    Would persons of ordinary skill in the art have reason to think that there is more than one method [to measure adhesive thickness] that might be used?
>         MR. LYONS: Object to form.
> A.    Yes, I think they would have thought that there may have been a few.

*Id*. at 43:12-17.

Further, while the Court has taken the specification into account in interpreting the claim language, it appears that the Court has failed to consider the material fact that it must also consider the patent's prosecution history, which contains "the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Phillips*, 415 F.3d at 1320-22. The prosecution history is of "primary significance in understanding the claims." *Markman v. Westview Instrs., Inc*., 52 F.3d 967, 980 (Fed. Cir. 1995).

During prosecution of the '879 Patent application, the USPTO Examiner rejected claim 1 as being unpatentable over U.S. Patent No. 5,496,615 to Bartlett et al. Dkt. 131-5, Ex. 121, Office Action dated 09/09/2013.  The Examiner interpreted the claims of the '879 Patent, including the recited "uniformity" and "average thickness" of the PSA layer, to be coextensive with the ***finished*** waterproofing membrane taught by Bartlett. *Id*. at pp. 4-5. In responding to the rejection, the patentee did not argue otherwise and assented to the Examiner's interpretation that all of the limitations of claim 1 (and its dependent claims) of the '879 Patent are directed to a finished membrane. Dkt. 131-5, Ex. 122, 12/3/2013 Resp.

Thus, while the Court interprets the claimed limitation of adhesive thickness as being determined at an intermediate point of manufacture, the prosecution history of the '879 Patent makes clear that a person of ordinary skill

could read the adhesive thickness limitation as being the average adhesive thickness of the final membrane product; hence rendering this limitation and claim 1 indefinite.

In view of the above, the patentee has not "made clear" that measurement of the adhesive thickness at an intermediate manufacturing step is an "essential part of the claimed invention," and therefore it was improper for the Court to read this process limitation into an otherwise unambiguous article claim. *Continental Circuits LLC*, 915 F.3d at 799.

AVM notes that since the *Rhine* case in 1999, the Federal Circuit has "admonished against judicial rewriting of claims to preserve validity." *Abbott Laboratories v. Grifols Diagnostic Solutions Inc.*, 2022 WL 1237929 at *4 (N.D. Illinois April 27, 2022). See also, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004) ("This Court has frequently alluded to the 'familiar axiom that claims should be so construed, if possible, as to sustain their validity.' At the same time, however, the court has 'admonished against judicial rewriting of claims to preserve validity.'") (internal citations omitted).

Here, the language of claim 1 of the '879 Patent uses ordinary, simple English words to recite a completed membrane article. In describing the invention, the '879 Patent specification states as follows:

> *As shown in FIG. 1, the waterproofing membrane 10 comprises* three layers. One layer comprises a flexible carrier sheet 16 with two opposed surfaces. *A second layer comprises an approximately uniform layer of a waterproofing pressure sensitive adhesive 12 on one surface of the carrier sheet.* A third layer comprises substantially reflective inorganic particles 14 adhered to the outer exposed surface of the pressure sensitive adhesive (i.e., the surface opposite the surface of the pressure sensitive adhesive that is adhered to the carrier sheet) so as to provide the membrane with a substantially reflective surface.

'879 Patent at 4:30-40 (emphasis added).

FIG. 1, described as depicting "the waterproofing membrane of the present

invention" ('879 Patent at 4:21-22), clearly and unambiguously shows that the "approximately uniform" layer of adhesive refers to the second layer of the membrane ***after application of the inorganic particles*** and with the particles embedded therein.

Moreover, the claimed particle diameter "approximately equal to or greater than the average thickness of the pressure sensitive adhesive layer", and the '879 Patent's description of the significance of this limitation, means that the adhesive thickness and particle diameter could be considered simultaneously, in the finished membrane:

> The substantially reflective inorganic particles preferably have an average diameter approximately equal to or greater than the average thickness of the pressure sensitive adhesive layer. The use of relatively large diameter particles has the advantage of preventing blocking, where the surface of the membrane comprising the inorganic particles will adhere to the carrier surface 17 when the membrane is rolled up.

'879 Patent at 6:52-58.

Logically, to achieve this result the particles must stick up above the outer exposed surface of the adhesive in the finished membrane to prevent the outer exposed surface of adhesive from adhering to the opposite carrier surface when the membrane is rolled up, i.e., blocking. If the particle size is selected to be the same or only slightly greater than the adhesive thickness without the particles, then when the particles are applied, particularly at close to claimed 100% coverage of the outer exposed surface of the adhesive, the liquid adhesive will be displaced upward between the particles[3] and will rise above the top of the particles, and consequently not prevent blocking when the membrane is rolled up.

---

[3] See Dkt. 131-4 , Ex. 112, Wiercinski Dep. I 204:10-205:17; Dkt. 131-4 , Ex. 116, Stieve Dep. 46:6-22 and 81:11-15; Dkt. 131-5, Ex. 120, Dregger Reb. ¶43; and Dkt. 131-2 , Ex. 67, Serwin Patent, Fig. 2 and 13:40-49 ("By applying the particles to the binder the binder layer thickness will increase.")

1  Therefore, the claimed particle size cannot be selected based only on the as-
2  applied adhesive thickness, but instead the particles size must be compared to
3  adhesive thickness *after* the particles are applied.

4  Thus, the Court's construction is inconsistent with FIG. 1 (the only Figure
5  in the '879 Patent), as well as with the language of the claim and portions of the
6  patent specification. Both GCP and AVM's experts agree that there is more than
7  one sensible reading of the '879 Patent with respect to the adhesive layer
8  limitations (Dkt. 131-5, Ex. 120, Dregger Reb. ¶42; Dkt. 131-4, Stieve Dep.
9  42:20-23 and 43:3-5, 12-17), and the Court's improperly narrow construction is
10 further evidence that the '879 Patent specification does not provide sufficient
11 guidance for one to discern between multiple alternative constructions, in which
12 case the patent claim may be found indefinite. *Media Rights Techs., Inc.*, 800 F.3d
13 at 1371 ("a claim is indefinite if its language might mean several different things
14 and no informed and confident choice is available among the contending
15 definitions" (internal quotations marks omitted)).

16 It appears this Court neglected these key material facts in interpreting claim
17 1 narrowly because of concerns about possible invalidity, which is error. See
18 *Liebel-Flarsheim Co.*, 358 F.3d at 914. "[T]he role of a district court in construing
19 claims is not to redefine claim recitations or to read limitations into the claims to
20 obviate factual questions of infringement and validity but rather to give meaning
21 to the limitations actually contained in the claims, informed by the written
22 description, the prosecution history if in evidence, and any relevant extrinsic
23 evidence." *Am. Piledriving Equip, Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331
24 (Fed. Cir. 2011). "[I]f the only claim construction that is consistent with the
25 claim's language and the written description renders the claim invalid, then ... the
26 claim is simply invalid." *Rhine*, 183 F.3d at 1345.

27 //
28 //

**B.    The Court erred in interpreting claim limitations under its Indefiniteness analysis to sustain the validity of claim 1 of the '879 Patent**

It appears as though the Court, in failing to consider material facts presented to it, has made an error of apprehension, not reasoning, in understanding the terms (1) "outer exposed surface" of the "pressure sensitive adhesive" and (2) "pressure sensitive adhesive has an average thickness" in view of the '879 Patent and its intrinsic evidence, for which reconsideration and reversal of validity are proper.

**a.  "outer exposed surface" of the "pressure sensitive adhesive"**

In its Order Re: Motions for Summary Judgement (Dkt. 201), the Court has interpreted the '879 Patent invention as being "a waterproofing membrane that bonds to concrete cast against it" (citing, '879 Patent at 3:40–41), and that the "concrete *must permeate* through the particle layer to make contact with the pressure sensitive adhesive" so that the concrete bonds to the membrane via contact with the adhesive layer. Dkt. 201 at 11 (emphasis added).  In citing to the '879 Patent at 6:19–27, the Court states the "specification makes clear, the concrete does not bond to the membrane by contacting the particle layer; rather, the bond is created when the concrete contacts the pressure sensitive adhesive. The particle layer simply protects the adhesive from sunlight exposure." *Id*. The Court considers its interpreted embodiment where the concreate must permeate through the particle layer to reach the pressure sensitive adhesive as being the preferred embodiment. *Id*.

The Court's interpretation is in clear contradiction with the express teachings of the '879 Patent, and in particular to the preferred embodiments thereof. The '879 Patent discloses methods of waterproofing a concrete structure whereby the substantially reflective inorganic particles of the membrane face the area into which the concrete will be cast, and *concrete is cast such that it contacts*

*the substantially reflective particles of the membrane*. '879 Patent at 4:5–12 (emphasis added).  Independent claim 15 recites that the concrete is cast against a membrane of the '879 Patent "***such that it contacts the substantially reflective particles of the membrane***." '879 Patent at 10:52–55 (emphasis added). Also, Example 2 clearly discloses exemplary membranes of the '879 Patent were exposed to various levels of solar radiation, followed by casting concrete against the exposed particle surface and allowed to cure for seven days. '879 Patent at 8:26–54. Peel adhesion tests were performed on these exemplary membranes having cast, cured concrete contacting the exposed particle surfaces of the ***substantially reflective particles***. That is, the peel adhesion test is performed between the particle layer and cast concrete -not just the cast concrete and adhesive layer as would follow with the Court's interpretation.[4]

In deriving its interpreted preferred embodiment of the '879 Patent, the Court relied on language and limitations that do not exist in the '879 Patent, since nowhere is it disclosed or suggested that the cast concrete ***must*** permeate through the particle layer to make contact with the adhesive layer so that the concrete bonds to the membrane via contact with the adhesive layer. On the contrary, the '879 Patent clearly discloses that concrete is cast against and contacts the substantially reflective particles of the membrane which, in accordance with FIG. 1 and Example 1 of the '879 Patent, are embedded into the adhesive layer. '879 Patent at 7:60–63. With the plain and unambiguous language of claim 1 reciting that the "substantially reflective particles cover approximately 70% to 100% of the outer exposed surface of the pressure sensitive adhesive," embodiments of the final membrane products having less than 100% particle coverage would have an "outer exposed surface" of the "pressure sensitive adhesive", as defined by the

---

[4] See '879 Patent at 2:34-49 (describing prior art technology that utilizes particles to bond to concrete which is cast against the membrane).

Court[5], residing between particles embedded in the adhesive layer. However, another perceivable preferred embodiment of the '879 Patent is one that includes the pressure sensitive adhesive being 100% covered by substantially reflective particles. Such an embodiment would not have an "outer exposed surface" of the adhesive layer "accessible to have concrete cast directly against it," thereby rendering the claim indefinite. In fact, the '879 Patent explicitly teaches that "most preferably 90% to 100% of the outer exposed surface of the pressure sensitive adhesive" are covered by the substantially reflective particles, which reinforces that 100% particle coverage of the adhesive layer is in fact a preferred embodiment of the '879 Patent rendering claim 1 indefinite. '879 Patent at 3:61-64 and 5:67 to 6:4.

The Court also bases its position on the concrete not contacting the particle layer stating that the "specification explains that membranes without the particle layer 'will suffer degradation of the pressure sensitive adhesive by heat and UV radiation and will not bond well to concrete after such exposure' " (Dkt. 201 at 11; citing, '879 Patent at 6:19–27). The membrane of the '879 Patent includes the flexible carrier sheet (which is construed as "a thin film, extrusion coating, or fabric that is the mechanical backbone of the membrane" (Dkt. 101 at 5 (Part III.2.), as well as a pressure sensitive adhesive on one surface of the carrier sheet, and substantially reflective inorganic particles adhered to the outer exposed surface of the pressure sensitive adhesive (i.e., the surface opposite the surface of the pressure sensitive adhesive that is adhered to the carrier sheet) so as to provide the membrane with a substantially reflective surface. '879 Patent at 4:30–40. Example 1 of the '879 Patent discloses the substantially reflective particles of the

---

[5] The terms "outer exposed surface" of the "pressure sensitive adhesive" have been construed to mean "the surface of the layer of the adhesive opposite the surface that is bonded to the carrier sheet and is accessible to have concrete cast directly against it." Dkt. 101 at 9 (Part III.4.).

membrane are embedded into the adhesive layer, while the description of results of Example 2 disclose that these embedded particles become better attached to the adhesive after UV and heat exposure, which in turn, increases the bond level of the membrane to concrete. '879 Patent at 7:60–63; 8:64 to 9:12. That is, one surface of the adhesive layer is attached to the flexible carrier sheet while the other surface has the substantially reflective particles adhered thereto and embedded therein.

In its Order (Dkt. 201 at 11) the Court failed to consider material facts which are express modalities of the '879 Patent, instead stating the function of the particle layer is present "simply [to] protect[] the adhesive from sunlight exposure." On the contrary, the '879 Patent clearly states that the substantially reflective particles are attached to or embedded in the adhesive layer to both protect the adhesive layer from degradation due to sunlight/heat exposure, as well as being a surface to which the cast concrete bonds for providing a good bond between the cast concrete and the membrane (i.e., the flexible carrier sheet, adhesive layer, and particle layer). '879 Patent at 6:19–27. A person of ordinary skill would understand that degradation of the pressure sensitive adhesive layer affects the chemical and physical properties thereof. This degradation to the adhesive layer would affect bonding at both of its surfaces (i.e., bond between the carrier sheet-to-adhesive, and bond between adhesive-to-particles/embedded particles), which in turn, affects the bonding of the entire membrane to cast concrete. As such, not only do the substantially reflective particles "keep the membrane cooler and block damaging UV exposure, thus minimizing the rate of degradation of the pressure sensitive adhesive," they also help to increase the bond of the entire membrane (i.e., carrier sheet, adhesive and particles) to cast concrete. *Id.*

-14-

Based on the foregoing, the Court has misinterpreted the preferred embodiment of the '879 Patent, reading limitations into claim 1 that are neither present in the '879 Patent or its intrinsic evidence. This has resulted in the Court overlooking material facts presented to the Court by AVM which would preclude further testimony on this issue, and which can no longer be evaluated by the Court or a jury. Reconsideration of the Order is respectfully submitted.

**b. "pressure sensitive adhesive has an average thickness"**

AVM respectfully submits that reconsideration is proper in relation to Section IV.A. above. Therefore, reconsideration must also be revisited as to indefiniteness of the claims of the '879 Patent with respect to the limitation "pressure sensitive adhesive has an average thickness."

**C. In granting GCPs' Motion for Summary Judgment as to Infringement of Certain Accused Products, the Court has failed to consider material facts presented to it which create genuine disputes of material fact.**

As described in Section IV.A. above, AVM submits that reconsideration of the granting of GCP's Motion for Summary Judgment as to Infringement of Certain Accused Products is proper.

Notwithstanding, even if the Court were correct that the PSA is measured at an intermediate point of manufacture, the Court committed error in finding an absence of genuine issue of material fact as to infringement, as there is simply no evidence of record as to how the Accused Products are manufactured, and more specifically, whether the PSA is applied "approximately uniform[ly]" to the carrier sheet or at an average thickness within the claimed range.

GCP's expert Mr. Stieve testified that he has never seen the Aussie Skin manufactured and no one has ever described to him how the Aussie Skin is manufactured. Dkt. 137-26, Ex. Z, Stieve Dep. 84:18-23. Instead, he assumes that the adhesive is applied uniformly to the carrier sheet before the particles are added

"based upon my experience and understanding of how waterproofing membranes are manufactured." Dkt. 131-4, Ex. 116, Stieve Dep. 51:14-20. Any suggestion that the PSA is applied "approximately uniform[ly]" to the carrier sheet of the Accused Products, or at an average thickness within the claimed range, is pure speculation.

As such, infringement is a triable issue for the jury. Reconsideration is respectfully submitted.

**D.    In granting GCP's Motion for Summary Judgment as to No Inequitable Conduct, the Court failed to consider material facts presented regarding the knowledge of Inventor Wiercinski and Attorney Leon.**

In granting GCP's Motion for Summary Judgment as to No Inequitable Conduct, the Court stated that "[t]he evidence, however, reveals that AVM is stitching the record together by improperly sharing facts specific to the individuals," further noting that AVM was "imputing" the knowledge of Wiercinski onto Leon, and the intent to deceive from Leon onto Wiercinski. Dkt. 201 at 30. Respectfully, the Court has failed to consider material facts and evidence presented to it that create a genuine dispute of material fact which is proper for trial.

GCP has previously admitted that Preprufe® 300R/160R membranes were developed by W. R. Grace & Co.–Conn. (GCP's predecessor-in-interest) (hereinafter, "Grace") and have been available for sale in the United States since the 1990s. Dkt. 104 at ¶10. Inventor Wiercinski, GCP's 30(b)(6) witness, also assented that these products had been developed and sold since the 1990s. See Dkt. 131-4, Ex. 112 at 111:5-14.

A review of the record similarly shows that Attorney Leon is in-house counsel for GCP and was the same for Grace.  Attorney Leon is noticed as the attorney related to U.S. Patent No. 5,316,848 ("Bartlett '848"), a patent which was

1  filed August 17, 1992 and discussed during the 30(b)(6) testimony of Robert

2  Wiercinski. *See* Dkt. 131-4, Ex. 112, at 111:23-112:5 and 113:17-114:16.

3  Attorney Leon is also noticed as the Attorney related to the Bartlett '848

4  continuation-in-part application which was granted as U.S. Patent No. 5,496,615

5  ("Bartlett '615") (Dkt. 131-4, Ex. 113) filed on October 15, 1993, and is one of

6  the patents which was intended to encapsulate the Preprufe® 300R/160R

7  commercial embodiment. *See* Dkt. 131-5, Ex. 119 at 112:21-113:22.

8       AVM has submitted to the Court publicly available documents related to

9  Preprufe® 300R/160R membranes having copyright dates as early as 2002. *See*

10  Dkt. 131-7, Exs. 150-152. These documents include legal disclaimer's such as

11  "[t]his product may be covered by patents or patent pending," and "Preprufe,

12  Bituthene and Hydroduct are registered trademarks of W. R. Grace & Co.–Conn."

13  *See* Dkt. 131-7, Exs. 151 and 152. Exhibit 152 was printed in the United States

14  by Grace, featuring a copyright date of 2007. As in-house counsel for Grace and

15  GCP, Attorney Leon would certainly have had some knowledge of these

16  documents prior to the May 10, 2013 filing date of the '879 Patent application,

17  even if he was not involved in the creation of the document. Moreover, Attorney

18  Leon's knowledge of Preprufe®, Grace's flagship product and the "first pre-

19  applied blindside technology of its kind in the world that had a fully adhesive

20  system," and its characteristics (and any changes thereto) prior to and during

21  prosecution of the '879 Patent application, is an issue that should be explored at

22  trial. Dkt. 133-12, Doan Report at ¶23.

23       Thus, Preprufe® 300R/160R membranes had been available for sale in the

24  United States decades before the filing of the '879 Patent application. It is clear

25  from the record that taking the facts most favorably to AVM, there is at least a

26  genuine dispute material fact as to whether Attorney Leon had knowledge of

27  Preprufe® 300R/160R membranes during prosecution of the '879 Patent. *See*

28  *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295 (Fed. Cir. 2016).

-17-

The Federal Circuit has expressly held that "the duty of candor cannot be avoided by willful ignorance or compartmentalization of knowledge within a company in an effort to insulate the patent applicants and their attorneys from information unfavorable to patentability." *Synthon IP, Inc. v. Pfizer Inc.*, 472 F. Supp. 2d 760, 779 (E.D. Va. 2007), *aff'd in part,* 281 F. App'x 995 (Fed. Cir. 2008); *see also, Novo Nordisk Pharms., Inc. v. Bio–Technology Gen. Corp.*, 424 F.3d 1347, 1361–62 (Fed. Cir. 2005) (rejecting the "circular logic" that failure of counsel to disclose the facts was excused "because the inventors failed to fully inform them" of those facts). Indeed, if a corporate entity were able to shield knowledge of prior art in such a manner, it would contravene the duty of candor under 37 C.F.R. §1.56 entirely. *See FMC Corp. v. Hennessy Industries, Inc.*, 836 F.2d 521, 526 n. 6 (Fed. Cir. 1987) (recognizing in the context of an alleged infringer's inequitable conduct claim that "one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art"); s*ee also TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1303-1306 (Fed. Cir. 2016) (finding no clear error of the district court's finding of deceptive intent based on knowledge by a corporation generally and a named inventor of a prior art reference which was publicly disclosed at an exposition and not disclosed to the PTO by in-house counsel "until the last possible moment").

In sum, AVM has presented evidence which creates a genuine issue of material fact and was not considered by this Court in granting GCP's Motion for Summary Judgment as to No Inequitable Conduct. It is notable that no declarations denying Attorney Leon's knowledge of Preprufe® 300R/160R membranes during the '879 Patent application were submitted either in support of GCP's Motion or in opposition to AVM's Motion. With no statements on the record related to this issue, this Court should not preclude Attorney Leon from being called at trial on this issue and having the veracity of his testimony

evaluated by this Court and a jury.

Similarly, there is a genuine dispute of material fact as to whether or not Inventor Wiercinski made the decision to withhold the Preprufe® 300R/160R reference from the U.S. Patent and Trademark Office. Robert Wiercinski's deposition errata (Dkt. 131-4, Ex. 113) showed clearly the inventor's intent to alter his testimony after determining the implications of the matter, and also after AVM's request for add the defense of Inequitable Conduct. Other patents in GCP's portfolio show the company has disclosed publicly available documents when relevant to the prosecution, yet a highly relevant material reference was neglected from the prosecution of the '879 Patent. AVM has produced documents, such as U.S. Patent No. 7,968,171 ("Seth '171") (Dkt. 131-6, Ex. 140) which evinces GCP has disclosed publicly available documents during the prosecution of other patents. The "OTHER PUBLICATIONS" section of Seth '171 includes such a GCP document, Bituthene.R. Pre-Pour Membrane™; "The First Truly Effective Blind Side Waterproofing System." W. R. Grace (Oct. 1993).

Based on this evidence, there is a genuine dispute as to the material fact of whether or not there was a deceptive intent by Inventor Wiercinski to not disclose the Preprufe® 300R/160R membranes to the U.S. Patent and Trademark Office. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence"). Respectfully, the Court has overlooked material facts presented to the Court by AVM which would preclude further testimony on this issue and which can no longer be evaluated by the Court or a jury. Reconsideration of the Order is respectfully submitted.

//

//

//

//

**E.    In granting *in part* GCP's Motion for Summary Judgment as to No Anticipation, the Court failed to consider material facts presented regarding the disclosure of U.S. Patent No. 7,776,432 ("Serwin")**

The claim term "flexible carrier sheet" was construed by the Court as "a thin film, extrusion coating, or fabric that is the mechanical backbone of the membrane." Dkt. 101 at 5 (Part. III.2.). Similarly, "membrane" was construed as "a thin pliable sheet of material forming a barrier or lining." *Id*. at 4 (Part. III.1.). AVM's proposed construction for "membrane" required, *inter alia*, that the membrane "may be wound on a roll." Dkt. 54 at 6. The Court expressly rejected this, noting:

> Although membranes ***may*** contain "edge portions which may permit overlapping seams with another membrane," ***may*** be used "for bonding to concrete cast against it," and ***may*** "be wound on a roll," at no point does the specification treat such uses as requirements of the Invention. *See In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006) (explaining that "optional elements do not narrow the claim because they can always be omitted").

Dkt. 101 at 4 (Part. III.1.) (emphasis in original).

In granting *in part* GCP's Motion for No Anticipation, the Court has improperly required that a previously-rejected limitation be disclosed in Serwin in order to find anticipation:

> A fundamental element of the '879 Patent's novelty is that it no longer requires a removable release sheet to prevent the membrane from adhering to the carrier sheet "when the membrane is rolled up." ('879 Patent at 1:20-21). ***As common sense requires, the carrier sheet must be both "thin" and "flexible" to be "rolled up."*** Mr. Dregger's assertion that Serwin's plate, in an alternate embodiment must have some degree of flexibility," does not explain how that embodiment expressly or inherently discloses a carrier sheet that is "a thin film, extrusion coating, or fabric." Therefore, Mr. Dregger fails to support his conclusion that Serwin anticipates this element of the '879 Patent. And when facing a clear and convincing evidentiary burden, no reasonable juror could find otherwise.

Dkt. 201 at 20-21 (Part.II.B.1.a.) (emphasis added).

AVM respectfully submits that the Court has failed to consider material facts presented to it before its Order (Dkt. 201), and has applied a claim

construction which was previously rejected (i.e., that Serwin's plate must be capable of being "rolled up") in concluding that no reasonably jury would find that U.S. Patent No. 7,776,432 ("Serwin") anticipates the limitations of the '879 Patent. *See Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 727, 63 U.S.P.Q.2d 1031 (Fed. Cir. 2002) (vacating summary judgment that claims were not anticipated or obvious where district court based its invalidity analysis on an erroneously narrow construction of the claims and improperly excluded an item of prior art).

In the Order, the Court appears to rely solely on Mr. Dregger's Expert Report and gives no consideration to Mr. Dregger's deposition testimony, which is of record in its entirety. During his deposition, Mr. Dregger opined that Serwin disclosed "a thin film, extrusion coating, or fabric that is the mechanical backbone of the membrane." Dkt. 131-7, Ex. 161 at 84:1-4, see also, 79:19 to 82:22. In support of his opinion, when asked "[w]hat is disclosed in Serwin that is a thin film, extrusion coating, or fabric," Mr. Dregger testified as follows:

> I apologize for what's going to be repetitious, probably. It is considering alternate embodiments of the -- I go back to exactly what they say. I believe they call it the composite plate or the plate. And they give alternate embodiments of it. And we can go through the list that include plastic and -- I think it's metal -- aluminum, aluminum and plastic. And I saw those two words, and I considered what a POSITA would consider is aluminum and what is plastic. And within that -- pretty broad -- within that broad category there certainly is well known in the -- for POSITAs in roofing, thin and pliable variations of each of those materials.

Dkt. 131-7, Ex. 161 at 84:5-22.

Further, the disclosure of Serwin expressly contemplates embodiments utilizing materials which may be thin, stating with respect to Figure 8:

> "The floor boards are constructed by providing a metal profile 27. The metal ***may preferably be bent into a U-shape*** such that an inorganic composite material may be cast into the U thus formed. A preferred metal may be aluminium or ***a thin stainless steel*** in that these are non-corrosive when exposed to humidity which may be present in the living

environment."

*See* Dkt. 131-2, Ex. 67 Serwin at 14:52-60 (emphasis added).

Likewise, Serwin teaches "a tension plate of steel, aluminium or ***plastic shell, for example 0.1 to 1.5 mm thick***." *See* Serwin at 9:31-33 (emphasis added). The thickness taught by Serwin's plate is the ***very same range*** enumerated in the '879 Patent and recited as an express limitation of dependent claim 11,[6] "[t]he carrier sheet typically will have a thickness of about 0.05 to 2.0 mm, preferably about 0.3 to 1.0 mm." *See* '879 Patent at 4:42-44 and cl.11. By applying the doctrine of claim differentiation, the claimed range of claim 11 is "presumed to be of narrower scope" than claim 1. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1334 (Fed. Cir. 2010) (citations omitted). Thus, a reasonable jury could conclude the Serwin plate is considered "thin" as taught by the '879 Patent given the express thickness range of Serwin's plate overlaps with the narrower carrier sheet limitation presented in claim 11 of the '879 Patent. This information was also presented to the Court in AVM's Final Invalidity Contentions (Dkt. 131-7, Ex. 153), and considered by AVM's expert Phillip Dregger in his report. *See* Dkt. 131-7 at 376, Ex. 153; *see also* Dkt. 131-4, Ex. 114 at 1-2.

Thus, in granting GCP's motion, the court has neglected evidence in support of, and key material facts which substantiate a genuine issue of fact as to anticipation by Serwin. Contrary to this Court's supposition, a reasonable juror could find that the plate of Serwin may be "thin," particularly when considering the express teachings of the patent. *See Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001) ("When a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior

---

[6] Dependent claim 11 recites: "The waterproofing membrane according to claim 1 wherein ***the carrier sheet has a thickness of about 0.05 to 2.0 mm***." *See* '879 Patent at cl.11 (emphasis added).

art."). As such, AVM respectfully submits that the Court did not consider material facts presented before the Order was entered, and reconsideration under L.R. 7-18 is proper.

## V.  CONCLUSION

For the foregoing reasons, AVM's Motion for Reconsideration should be granted and the Court should find that additional triable issues remain with respect to infringement, anticipation and enforceability. AVM further requests that, in the interests of judicial economy, issuance of a revised trial Scheduling Order be deferred until resolution of the present motion.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 22, 2022           /s/  Douglas G. Muehlhauser
                                 Douglas G. Muehlhauser

DeLIO PETERSON & CURCIO, LLC

Peter W. Peterson
Robert Curcio
David R. Pegnataro
Brian G. Schlosser

Attorneys for Defendant
AVM INDUSTRIES, INC.

-23-